[Civ. No. 3570. Fourth Dist. Mar. 1, 1948.]

WILKINSON & COMPANY (a Corporation), Appellant, v.
A. B. McKINLEY et al., Respondents.

Mack & Bianco for Appellant.

Joseph A. Brown for Respondents.

GRIFFIN, J.—This action involves an appeal by plaintiff from a judgment in its favor in an amount less than that to which it claims to be entitled.

On October 20, 1943, defendant A. B. McKinley, by Max McKinley, his agent (later relieved of personal liability) placed with plaintiff, a drilling corporation, an order to drill a water well and install casing at an agreed price of $3,919.45. This written agreement was later modified and the costs increased to $4,427.27, due to the size of the casings. One thousand two hundred fifty dollars had been paid on this indebtedness. The written order provided that "Seller shall not be liable for delays caused by act of God, . . . or any other cause beyond seller's control, including inability to secure material. Purchaser agrees to make all claims in writing for shortage or noncompliance with this order promptly upon delivery, and in the event purchaser does not make a claim in writing within ten days of date of delivery purchaser waives all claims for shortage or non-compliance with the above order. . . . Interest at 7 per cent will be charged on past due accounts. In the event seller places the collection of the amount owing hereunder in the hands of an attorney purchaser agrees to pay a reasonable attorney's fee in addition to the amount owing." On November 4, defendant and plaintiff company made application to the War Production Board for authority to do the work and supply the material. The separate form shows: "Period of Construction—Beginning 12/15/43—Completion 2/1/44."

In the answer of defendant it was admitted that Max McKinley was acting only as agent; that certain changes in price and material were agreed upon, but it was claimed that defendant only agreed to pay plaintiff the original contract price of $3,919.45, and then only upon condition that the well be completed by February 1st, 1944. He admitted the payments on the account ($250 on April 15, 1944, and $1,000 on August .17, 1944) and claimed by way of cross-complaint $10,536.80 damages to planted crops as an offset for failure of plaintiff to complete the well before February 1st, 1944.

After evidence was taken the trial judge authorized an amendment to the cross-complaint to conform to the proof. Paragraph 1 was amended to allege that defendant advised plaintiff that he planned to grow, in the cropping season of 1944, barley and other crops, if plaintiff could drill a water well to a depth of 600 feet by February 1st, 1944, or within a reasonable time thereafter; that relying upon said promise defendant planted 120 acres of barley.

The court then found that defendant executed the above-mentioned written order for materials and work and agreed to the change in price as indicated; that an attorney had been employed. Attorney's fees in the sum of $250 were allowed. He then found that it was not true that on October 20, 1943, plaintiff orally agreed with defendant to drill and complete a water well on this land to a depth of 600 feet by February 1st, 1944, but that it was true that defendant owned a certain parcel of land which was suitable for growing crops if water could be obtained to irrigate the same; that defendant advised plaintiff that he planned to grow, in the cropping season of 1944, crops on said land if the plaintiff would drill a well to a depth of 600 feet; that defendant did plant 120 acres of land to barley upon the promise of plaintiff made on or about October 20, 1943, to commence and *complete* said water well within a reasonable period of time. The court then found that a period of 12 weeks from October 20, 1943, was a reasonable time to *commence* drilling said well, and that a period of six weeks from the date of its commencement was a reasonable period within which to complete said well; that plaintiff waited until February 25, 1944, and was therefore negligent in failing to commence said well prior to that time; that plaintiff negligently delayed the completion of said well until August 10, 1944; that defendant did not have

sufficient water to irrigate the potatoes, barley and alfalfa during the spring and summer of 1944, which were planted on said land; but found that "only said barley was planted on a reliance of a promise to commence to drill and complete said water well within a reasonable period of time" (as above determined), and that "said potatoes and alfalfa were not planted in reliance upon any such promise"; that it is true that defendant "permitted work to be commenced pursuant to said order after the time that it should have been completed and at no time made any claim for shortage or noncompliance with said order as therein provided and in accordance therewith." And the court accordingly found "That by virtue thereof, defendant waived any breach in the performance thereof as to the potatoes and alfalfa." It found that the defendant was damaged, in reference to the barley crop only, in the sum of $1,200. After allowing this offset, judgment was entered that plaintiff recover a judgment in the amount of $1,977.27, plus $250 attorneys' fees, and ordered that neither party recover costs.

On appeal plaintiff states that the sole issue is the propriety of allowing the offset of $1,200 and the denial of costs to it for the reasons that: (1) defendant permitted the work to be commenced after the time of performance under the contract had expired and thereby waived the time of performance and any damages resulting to any crops; (2) that damages were waived by the unqualified acceptance of the work; (3) that the contract required a written claim to be made for noncompliance and no claim in writing was made; (4) that the finding that the barley crop was planted in reliance on the promise to drill and complete the well within the time found by the court is not supported by the evidence; and (5) that where a plaintiff recovers judgment in excess of the jurisdictional amount of the highest inferior court in the county costs are allowed as of course.

Max McKinley testified that he talked to Mr. Wilkinson a few days before he signed the purchase order; that he told him his father was developing new land next to his property; that it was "some time before we would have to have the water but he wanted to know for sure if he could get the water before he went too far along with it, and I asked him if he could drill the well and how long it would be before he could finish it. He said that he could not do it then—that his men were all busy, and I remember that was the latter

part of October, and he would not be able to start on it until about the 15th of December, and I asked him how long it would take to finish the well, and he said that it would take about three to four weeks, but that he wanted to allow himself at least three weeks more to complete the well in''; that he told him he would discuss the matter with his father and that he came back and told plaintiff that his father had said ''if he could get the well drilled at that time I could sign the purchase order for it''; that plaintiff did not start the drilling on December 15th, 1943, as agreed; that he called on him approximately six times between then and February 15th, 1944, and asked him when he was going to start on the well; that he told him his father had sent him in; that his father had purchased his seed and fertilizer and was ready to plant his potatoes; that he was worried because the work had not been commenced; that plaintiff, on each occasion, gave some excuse for not starting the work but assured him it would be soon; that plaintiff said: ''After all, it will only take three weeks to drill the well and we will start right away''; that he definitely told him he could start on the well about December 15, 1943, and it would take three or four weeks to drill it; that he could have the well by February 1st, 1944; that soon after February 15th he told plaintiff the rig had arrived on the property; that thereafter drilling operations were spasmotic and were delayed by breakdowns, etc.; and that he went in each week until August 15th, to complain about the progress being made.

The evidence shows that the barley crop, for the loss of which $1,200 was allowed, was planted in the early part of January, 1944. The potato and alfalfa crops were planted the latter part of February. Defendant completed laying pipe from other wells about March 21, 1944, and watered, to some extent, the potato and alfalfa crops, but did not have sufficient water and he was unable to properly irrigate the barley crop from those wells.

For the reasons stated the trial court disallowed any damages resulting to the potato and alfalfa crops. No appeal has been taken by defendant in this respect. We will therefore not consider the merits of the reasons assigned by the trial court for denying damages for the claimed loss of the potato and alfalfa crops.

 While it might appear from the findings that the defendant permitted the plaintiff to commence drilling the well

after the date when it should have been commenced, and a few days after the date it should have been completed under the original agreement, it is clear that defendant planted the barley crop in January, at a time when he had no knowledge that plaintiff would not complete the well. Each time defendant protested the delay he was more or less lulled into a false sense of security and he allowed the plaintiff to continue with the well drilling operations believing that it would take but three or four weeks to drill it and believing that plaintiff would fulfill his promise to commence and complete the well as agreed. From the evidence it appears that these promises of commencement of drilling and the completion thereof within three or four weeks therefrom were continuous and a matter of weekly occurrences, not only prior to but for many months after February 15, 1944. Drilling was not completed until August, 1944. By that time defendant had to abandon the barley crop as a loss. From this evidence it does not appear that there was any waiver by defendant, as a matter of law, of his right, under his agreement, to damages that might result to his barley crop. The case of *Brookings L. & B. Co.* v. *Manufacturers' Co.*, 173 Cal. 679 [161 P. 266], relied upon by plaintiff, is factually different.

■ The payment of $1,250 on the account did not, as a matter of law, constitute a waiver of any claim for damages where the payment was made under the circumstances related by defendant. He testified that when he paid the $1,000, an agent of plaintiff presented a bill for $4,427.27; that he protested it and informed him that "it was not correct, . . ."; that "he would not pay it"; that he told him of his losses and "I told him that my losses were more than their losses to begin with"; that he wanted Wilkinson to "come out and we would try to reach a settlement on the account."

■ The argument that damages were waived by an unqualified acceptance of the work is predicated upon the signature of defendant to a drilling progress slip. Plaintiff employed one Smart, a drilling contractor, to drill the well to a depth of 600 feet. He was delayed in starting and encountered much difficulty. His work was taken over by one Williams, who was paid by plaintiff to complete the job. Williams had Max McKinley sign the driller's report showing the exact depth and formation changes at various depths. Under the word "remarks" is noted: "Well completed and measured out to my satisfaction."

The trial court did not find that this amounted to a waiver of any claim for damages as to crops. There was nothing about the drilling operations that was not *finally* "completed and measured out." It cannot be said that the notation, considered with the other evidence, constituted a waiver, as a matter of law, of defendant's claim to damages for failure to drill *within the time agreed upon.*

■ The writing signed by Max specifying the terms and conditions of sale, made no reference to the time within which the drilling was to be commenced or completed, but it merely required a claim to be filed within ten days from *delivery* for any shortages or noncompliance with the written order. No written notice of failure to drill the well within the required time was required under that clause.

■ Although plaintiff denied that he agreed to commence or complete drilling within any specified time and claimed that the delay was due to his lack of ability to secure drillers to perform the work, the evidence, as above related, supports the finding that the barley crop was planted in reliance on the promise to drill and complete the well within the time found by the court.

■ The last contention is meritorious. Plaintiff recovered a net money judgment on his complaint in excess of the jurisdictional amount of the highest inferior court in the county. Under such circumstances costs are allowed as of course, even though defendant recovered damages on his cross-complaint for a cause of action growing out of the same transaction and above the limited amount. The amount of that recovery was offset against the amount of plaintiff's recovery, resulting in a net judgment in favor of plaintiff in the sum of $1,977.20.

In *Gerstein* v. *Smirl,* 70 Cal.App.2d 238, 240 [160 P.2d 585], the general rule, where both plaintiff and defendant seek to recover money judgments against each other, is stated to be:

"It is well settled that, where both plaintiff and cross-complainant recover money judgments, a defendant to whom the 'net result of the judgment' is favorable is entitled to recover all his costs . . . If the 'net result' of a judgment is favorable to plaintiff, unless it (in its net amount) is one which 'could have been rendered by a municipal or inferior court within the same county,' plaintiff's costs are 'allowed of course' " (Citing Code Civ. Proc., § 1032; *Hansen* v. *Covell,* 218 Cal. 622 [24 P.2d 772, 89 A.L.R. 670].) See, also, *Shelley*

v. *Hart*, 112 Cal.App. 231, 243 [297 P. 82] ; *Dobbins* v. *Horsfall*, 58 Cal.App.2d 23, 27 [136 P.2d 35].

The judgment, insofar as it adjudged that ''none of the parties recover their costs in said action'' is reversed, with directions to the court below to allow plaintiff its costs. The remaining portion of the judgment, that is, the portion other than the portion relating to costs, is affirmed. In the interests of justice defendant may recover his costs on appeal. (Rules on Appeal, rule 26.)

Barnard, P. J., concurred.