497 P.2d 77

In the Matter of the ESTATE of Philip STAVRO, aka Philipas Stavro Panagiotis, Deceased (two cases).

Anastasia PANAGIOTIS and Athanasia Kaslaris, Appellants,

v.

Ernest William MILTIADES, Special Administrator of the Estate of Philip Stavro, Deceased, Appellee.

Ernest William MILTIADES, Special Administrator of the Estate of Philip Stavro, Deceased, Appellant,

v.

Anastasia PANAGIOTIS and Athanasia Kaslaris, Appellees.

Nos. 1 CA–CIV 1568, 1 CA–CIV 1604.

Court of Appeals of Arizona, Division 1, Department A. May 16, 1972.

John G. Thomas, Phoenix, for Anastasia Panagiotis.

Charles Christakis, and Elizabeth Stover, Phoenix, for Athanasia Kaslaris.

Johnson, Tucker & Jessen by Arthur M. Johnson, and Daniel E. Nastro, Phoenix, for Ernest William Miltiades.

STEVENS, Presiding Judge.

This opinion relates to two consolidated appeals both of which arise out of a single will contest. In 1 CA–CIV 1568 the issue is the propriety of a summary judgment adverse to the contestants after which the will was admitted to probate. In 1 CA–CIV 1604 the issue is the correctness of the ruling of the trial court which sustained the contestants' objections to the statement of costs which had been filed by the successful proponent of the will. The will contest originated before the will was admitted to probate.

## THE IDENTIFICATION OF THE PARTICIPANTS

The deceased and all of the participants are Greek or of Greek ancestry. The languages which the several persons utilized are English, Greek and Turkish. The proficiency of the several persons in these languages varied greatly.

The deceased was Philip Stavro also known as Philipas Stavro Panagiotis. He will be referred to herein as Philip. Philip died on or about 6 May 1969 at the approximate age of 76 years. The will in question bears the date of 1 August 1968. Philip had executed a prior will bearing the date of 25 July 1965. Philip spoke little, if any, English. He spoke Greek but not well, and his preferred language was Turkish.

Ernest Miltiades, herein referred to as Ernest, is the named executor in the 1968 will and was the special administrator during the period of the contest.

Anastasia Panagiotis, herein referred to as Anastasia, was a niece of Philip. She speaks some English and her preferred language is Greek. She was designated as a one-sixth residual beneficiary in the 1965 will and she was left $50.00 under the 1968 will. She is a contestant and has lived in Phoenix for a number of years.

Athanasia Kaslaris nee Athanasia Panagiotoglou is a contestant. She will be hereinafter referred to as Athanasia. The record discloses her to be an adopted daughter of Philip. She is not named in either will and she is a resident of West Germany.

George Panagiotoglou was a grandnephew of Philip. He came to this country in October 1965 to live with Philip. He was not named in the 1965 will and was named as the beneficiary of 50% of the residual estate in the 1968 will. Also named as the beneficiary of 50% of the residual estate in the 1968 will is George's brother Nikolas who resides in Greece. Nikolas was named as the beneficiary of one-sixth of the residual estate in the 1965 will. Nikolas' son Philipas was not named in the 1965 will and was given a bequest of $10,000 in the 1968 will.

Philip's sister, who apparently is the sole survivor of his immediate family is not a litigant. She resides in Greece. She was given $10,000 by the 1965 will and $1,000 by the 1968 will.

There is some question in the file as to whether Athanasia Kaslaris and Athanasia Panagiotoglou are one and the same person. From our examination of the file we conclude that both names relate to the same person. Athanasia under the name of Athanasia Kaslaris filed a timely notice of appeal together with a cost bond in relation to the will contest. By different counsel there is a notice of appeal without a cost bond filed on behalf of Athanasia Panagiotoglou. If these two names do not relate to one and the same party then the appeal filed on behalf of Athanasia Panagiotoglou is defective. Anastasia filed a timely notice of appeal and an affidavit of her inability to post a cost bond, this notice was relating to the will contest.

There was a timely separate appeal from the trial court's order declining to tax costs in favor of the proponent of the will and against the contestants.

## THE WILL CONTEST

The will contest was resolved by a summary judgment. Affidavits, answers to interrogatories and depositions were considered by the trial court. Motions for summary judgment are governed by Rule 56, Rules of Civil Procedure, 16 A.R.S.

■ In the event that the matters which are appropriate for the consideration of the Court in ruling on a motion for summary judgment disclose a disputed issue as to one or more material facts, which if true, could affect the final judgment, then it is error to grant the motion and to enter the summary judgment. Elson Development Company v. Arizona Savings & Loan Association, 99 Ariz. 217, 407 P.2d 930 (1965). If the material facts although not in dispute, are uncertain, summary judgment is not proper. Boozer v. Arizona Country Club, 102 Ariz. 544, 434 P.2d 630 (1967).

> "Litigants are entitled to the right of trial where there is the slightest doubt as to the facts." Peterson v. Valley National Bank of Phoenix, 90 Ariz. 361 at 362, 368 P.2d 317 at 318 (1962). See

also Brand v. Dolgin, 17 Ariz.App. 154, 496 P.2d 144 (decided April 27, 1972).

When an appellate court reviews the granting of a summary judgment, the matter is viewed in the light most favorable to the losing party, giving such party the benefit of all favorable inferences that may be reasonably drawn therefrom. Livingston v. Citizen's Utility, Inc., 107 Ariz. 62, 481 P.2d 855 (1971).

■ The moving party has the burden of a prima facie showing that there are no genuine issues of material fact so as to entitle the moving party to a summary judgment. Elerick v. Rocklin, 102 Ariz. 78, 425 P.2d 103 (1967). This burden must be met before the party opposing the motion has the duty to come forward with evidence to establish the existence of a dispute as to a material fact or facts. Flynn v. Lindenfield, 6 Ariz.App. 459, 433 P.2d 639 (1967).

■ In the review of a summary judgment the appellate court cannot weigh the disputed facts and reach a determination as to the probable outcome of the litigation if those same facts were established in the trial of the cause. Pitzen's Wig Villa v. Pruitt, 11 Ariz.App. 332, 464 P.2d 652 (1970).

With these principles in mind, we will now turn to the record in this case to determine whether specific facts were presented by the contestants which showed that there were genuine issues for trial that should have precluded the granting of a summary judgment.

■ In the instant case it is urged that George exerted undue influence upon Philip in the making of the 1968 will. This allegation was denied by George thereby casting the burden of establishing the presence of disputed material facts as to undue influence upon the contestants. In re Estate of Sherer, 10 Ariz.App. 31, 455 P.2d 480 (1969).

We look then to the proof offered by the contestants and its sufficiency to establish the presence of material facts, which if true, might affect the outcome of the trial

on the merits. The record does not disclose that the attorney who drafted the will and supervised its execution had any knowledge of any questionable conduct leading up to the preparation and execution of the 1968 will.

Many of the persons named in the 1968 will were apparently not personally known to Philip. There are persons named in the 1965 will who were omitted from the 1968 will and there were persons who were named in the 1968 will who were not named in the 1965 will. There were marked changes in the treatment of those who were named in both wills. George assisted in the preparation of the 1968 will by providing Philip with a list of his relatives' names which he (the testator) could not remember so that they could all be written in one place. Only George and Philip were present on this occasion. At the request of Philip, George then contacted a Mr. Tremoulis who came to the testator's home and wrote these names in English. During the time that these names were being written in English, George, Philip and Mr. Tremoulis were present. George then wrote an amount of money next to each name pursuant to Philip's instructions. This list was subsequently lost or destroyed. The record seems to indicate that Mr. Tremoulis was present when the treatment to be accorded to each relative was recorded by George.

There was a dispute as to whether Philip was happy with George and whether George was happy to be with Philip. There is evidence that after the execution of the will Philip expressed dissatisfaction with the will and apparently was fearful to change it.

George spoke both Greek and Turkish and interpreted for Philip in matters relating to the will.

There is a dispute as to the closeness of the relationship between Anastasia and Philip and whether George interfered with what might have been an otherwise close relationship between these two relatives.

We have reviewed the numerous Arizona cases arising out of will contests. The majority of those cases reviewed the correctness of a jury determination as to the existence or absence of undue influence. In our opinion the rules governing summary judgments and the cases interpreting them are entitled to greater weight and consideration in the case at bar than the various principles set forth in undue influence cases which have been reviewed on appeal after the trial of a will contest. We do, however, recognize that:

"Where the contestant has presented evidence from which a reasonable person could conclude that the person charged with exerting undue influence had a disposition to exercise such influence, that he had an opportunity to exercise undue influence, that some influence was exerted, and that the will seems to result from such influence, a question of fact is presented." In re Estate of McCauley, 101 Ariz. 8, 11, 415 P.2d 431, 434 (1966).

It is recognized that a testator has the privilege of changing his will. It is recognized that a testator has the privilege of disposing of his property as he desires and the courts will not substitute their desires for those of the testator even though the courts might believe that a different disposition of the property would seem to be more reasonable and more appropriate.

From our review of the record we cannot say that there is clearly an absence of any material facts which might affect the outcome of the trial of the will contest and we can say that there is at least some doubt as to the absence of undue influence exerted by George upon his uncle Philip. By this opinion we have not attempted to outline all of the potential factual issues and we have restricted ourselves to only those matters which, in our opinion, are such as to require a trial of the will contest on its merits.

The summary judgment is reversed.

THE SECOND APPEAL—1 CA–CIV 1604

This appeal is from the order of the trial court dated 2 November 1970 which sustained the objections of contestants to the statement of costs filed by Ernest Miltiades, the Special Administrator of the Estate of Philip Stavro, and the successful proponent of Philip's 1968 will, after summary judgment was granted in his favor and against the contestants. The sole issue presented is whether the appellant, Ernest Miltiades, as Special Administrator, is entitled to recover for the estate costs incurred in successfully defending the preprobate will contest which is the subject of the primary appeal—1 CA–CIV 1568.

"Costs" are incidental damages which are allowed to indemnify a party against the expense of successfully asserting his rights in court. State v. Griswold, 8 Ariz.App. 361, 446 P.2d 467 (1968).

A.R.S. § 12–341 provides that:

"The successful party to a civil action shall recover from his adversary all costs expended or incurred therein *unless otherwise provided by law.*" (Emphasis added).

With specific regard to costs incurred in a will contest *after probate*, A.R.S. § 14–376 states in pertinent part that the fees and expenses shall be paid by the party contesting the validity or probate of the will if the probate is confirmed.

"This section is concerned with the costs and expenses of a will contest after probate and not with the costs and expenses incurred in a special administration." In re Estate of Pitt, 1 Ariz.App. 533, 540, 405 P.2d 471, 478 (1965).

The severity of this statement is lessened by a subsequent comment in the same case:

"There being no statutory rule in fixing costs in a will contest before probate it lies in the sound discretion of the probate court applying equitable principles to fix the costs." 1 Ariz.App. at 542, 405 P.2d at 480. Accord, Hazar v. State ex rel. Swift, 17 Ariz.App. 84, 495 P.2d 854 (April 17, 1972).

Ernest argues that A.R.S. § 12–341 no longer permits any discretion to be exercised because of the recent amendment to Rule 54(f), Arizona Rules of Civil Procedure, 16 A.R.S., which deleted the following pertinent language from that Rule:

"* * * costs shall be allowed as of course to the prevailing party unless the court otherwise directs."

We do not agree that the present wording of Rule 54(f) has precluded the exercise of discretion on the part of the trial judge. In a case decided subsequent to the amendment of Rule 54(f), it was stated that the Arizona probate courts are not without discretionary authority to order the payment of costs in contested probate proceedings. In re Estate and Guardianship of Vermeersch, 15 Ariz.App. 315, 488 P.2d 671 (1971).

It is also pertinent to note that the case cited herein for the proposition that a probate court has discretionary authority in decisions which relate to the taxing of costs was based upon a judicial interpretation of A.R.S. § 12–341 which has remained unchanged and not upon Rule 54(f) in its original form. In re Estate of Pitt. The argument that a change in Rule 54(f) has the effect of eliminating the discretionary authority of a probate judge is therefore one with which this Court cannot agree.

Even if the amendment of Rule 54(f) were significant to the issue herein presented, we are of the opinion that such amendment lacks the effect advanced by the appellant, i. e., to render a decision as to a granting of costs a non-discretionary function. The last sentence of Rule 54(f) presently provides that upon the receipt of a statement objecting to a claim for costs:

"The court shall pass upon the objections and by its order correct the statement of costs to the extent that it requires correction."

We are of the opinion that this language has preserved the discretionary authority of the trial court to correct a statement of costs in a manner it deems proper under the circumstances of a particular case.

In sustaining the contestants' objections to the proponent's statement of costs the trial court stated:

"* * * the Court * * * feels that the legislature's enactment of 1956 of Articles 4 and 5, Chapter 3, Title 14, Arizona Revised Statutes, with provision for liability for expenses upon contest only in Article 5 (A.R.S. 14–376) indicates a legislative intent that such liability should not extent (sic) to the contest of a Will before Probate."

It is our opinion that the trial court's interpretation of the Legislature's intent was incorrect. We hold that the trial court was in error in its conclusion based thereon that the statutes precluded the taxation of the costs in the contest of a will before probate. We further hold that while the statutes do not mandate the taxation of costs in this instance the trial court is free to exercise its discretion with regard thereto.

The order denying the taxation of costs is vacated and the main appeal being a reversal the trial court will exercise its discretion in appropriate future proceedings.

CASE and DONOFRIO, JJ., concur.