515 P.2d 340

**Thomas TROLLOPE and Bernice Trollope, his wife, Richard L. Stenz and Dorothy Stenz, his wife; and Peter Kruidenier, Appellants,**

v.

**Ralph L. KOERNER and Bonnie Koerner, his wife, Appellees.**

No. 1 CA–CIV 1935.

Court of Appeals of Arizona,
Division 1,
Department B.

Oct. 30, 1973.

Rehearing Denied Nov. 20, 1973.

Review Denied Dec. 18, 1973.

**44**

Burton M. Bentley, Barry Allen Reiss, Phoenix, for appellants.

Jennings, Strouss & Salmon by Riney B. Salmon, II, Phoenix, for appellees.

## OPINION

EUBANK, Presiding Judge.

This appeal is from a judgment of the Superior Court of Maricopa County in favor of the appellants in the amount of $291.75. Appellants contend on appeal that the Superior Court erred by (1) making findings which were inconsistent with the mandate of the Arizona Supreme Court on a previous appeal in this matter; (2) rendering a judgment which was not supported by the evidence; (3) not awarding appellants interest from the date the amounts became due; and (4) not awarding appellants their costs in the trial court.

A brief summary of the underlying facts of this case is set forth below; however, a more complete statement can be found in the opinion of the Supreme Court in the first appeal reported in Trollope v. Koerner, 106 Ariz. 10, 470 P.2d 91 (1970) which is incorporated herein.

In July 1965, appellee Ralph Koerner, a dentist, consulted appellant Thomas Trollope concerning the rental of an empty storage space in appellant's office building for dental offices. The parties orally negotiated a five year lease, and agreed that appellant would make all of the necessary improvements in order to prepare the premises for a dental office, except for certain decorative costs and plumbing costs. The improvements, costing in excess of $6000, were completed, but the parties could not reach an agreement as to all the provisions of the lease and it was never executed. The appellants sued appellees for breach of contract, but on appeal the Supreme Court held that the statute of frauds barred recovery on that basis. Trollope, supra. However, the Supreme Court remanded the case to the trial court for consideration of an alternative theory of relief, stating:

> "There is a line of authority which holds that where a lease agreement is unenforceable for lack of a writing or certainty as to terms, a landlord who undertakes to make significant improvements to suit the potential lessee in anticipation of the lease may have a quasi-contractual recovery for the expense of such improvements to the extent that they are or were intended to be exclusively beneficial to the potential lessee. Minsky's Follies of Florida, Inc. v. Sennes, 206 F.2d 1 (5 Cir. 1953); Annot., 59 A.L.R. 604 (1929); and see generally, 3 Williston on Contracts (3rd Ed.), § 534.

> "Such a recovery would appear to be clearly appropriate here, *to the extent that expenses were reasonably incurred in good faith for Koerner's benefit* in his anticipated use of the premises, and *providing that Koerner's ultimate refusal to perform was not caused by unjustified conduct on the part of the plaintiffs.*" 106 Ariz. at 18, 470 P.2d at 99. (Emphasis added)

Upon remand, the appellants set about to prove that all of the six thousand plus dollars worth of improvements were *exclusively beneficial* to the appellees, while the appelles argued that their refusal to sign the lease was based on *unjustified conduct* of the appellants thereby precluding the appellants from any recovery. The trial court found that appellees were liable for $188 for

special plumbing alterations plus one-half of certain plumbing costs (one-half of $1,207.-51 or $603.75), for a total of $791.75. The court then granted appellees' counterclaim of $500 which represented money advanced to appellants by appellees. Accordingly, by offset the trial court entered judgment in the sum of $291.75 for appellants with interest from the date of judgment, and ordered each party to bear their own costs.

Appellants first contend that the findings of fact and conclusions of law were inconsistent with and contrary to the mandate of the Arizona Supreme Court in that the findings were not denominated as "Findings of Fact and Conclusions of Law"; the findings were erroneously entered by the court as a minute entry and then incorporated as a part of the judgment; and finally the findings failed to follow the mandate of the Supreme Court in Trollope v. Koerner, supra.

■ Since neither party requested findings of fact and conclusions of law prior to trial as required by Rule 52(a), Rules of Civil Procedure, 16 A.R.S., we fail to see how the appellants can claim any injury from the procedure followed by the trial court here. The findings, as will be seen later, do permit us to examine the basis upon which the trial court relied in reaching its judgment. Moreover, following the trial court's pronouncement of its findings of fact and conclusions of law, appellants made no objections to such findings and conclusions, nor did they make a motion to amend or make additional findings pursuant to Rule 52(b). In such a case, appellants may not now raise on appeal the insufficiency of the trial court's findings of fact and conclusions of law. Sato v. First National Bank of Arizona, 12 Ariz.App. 263, 469 P.2d 829 (1970). We see no prejudicial error based on this contention.

■ Appellants further contend that no evidentiary basis existed for the trial court's finding that only $791.75 of the improvements paid for by appellants was for the "exclusive benefit" of the appellees. We agree. The trial court's second find-

ing, which established the amount of appellants' damages, was specifically and solely based on Exhibit #16 in evidence. Exhibit 16 consisted of a one-page memorandum handwritten by appellant Thomas Trollope which reads as follows:

"OFFICE FOR
DR. RALPH KOERNER
Suite 112—950 Sq. Ft.
Rental $356.50 per mo. + Tax.

Term:  5 yr.

deposit:  —1st. & Last Month.

Improvements

| By Lessor | By Lessee |
|---|---|
| All partitions per plan— | Any Carpets— |
| All Air-Conditioning— | Plumbing—½ Cost |
| All Standard Lighting— | Paneling and decorator items |
| Any Tile floor Cover— | |
| All Painting— | |
| All Normal Electrical. | |
| Plumbing—½ Cost. | |

Other Points

1.  Parking Protection—
2.  Disability clause
3.  Adequate Refrigeration"

This exhibit, as determined by the Supreme Court, had no legally binding effect on the parties, except as evidence of good or bad faith, since a condition precedent to its enforcement was the execution of a written lease; so that basing damages solely on this exhibit was clearly erroneous. Nor do the facts substantiate the possibility that the allocation of improvement expenses to the appellees, in accordance with this exhibit, correlates to the breakdown of what was "exclusively beneficial" to the appellees. We can conceive of no theory, nor have the apppellees provided us with one, whereby *one-half* of the plumbing would be "exclusively beneficial" to the appellee-tenant while the other one-half would not. Additionally, several items among the improvements, such as the special high voltage electrical system installed for the dentist's equipment needs, which a normal commercial suite would not ordinarily require, were not considered by the trial court in its award although they were apparently "exclusively beneficial" to the appellees.

**46**

In addition, however, we believe that the trial court erred by granting *any* relief to the appellants since the record is replete with evidence of their bad faith which would excuse the appellees from executing the lease agreement. The old equity maxim that one must come into equity with clean hands is still meaningful.

The record shows that when the parties met in 1965 and agreed upon a lease and improvements to the storage space in question, appellant Trollope prepared Exhibit 16, supra, which as we have seen supposedly showed the original understanding of the parties regarding who should pay for *improvements.*

The renovation of the storage space began and in September 1965 appellants billed appellees for $367.80 which included the costs of clearing out the storage space and labor and materials for temporary lighting, partitioning of the office, and finishing the existing walls. Appellees objected to these charges since they did not comply with the parties' original agreement, but finally agreed to pay the entire sum less a portion of the clean out charge in order that the work could continue. Later that September other disagreements arose with respect to who should pay for *labor and material for reinforcing a wall* for X-ray, installation of a shower, certain plumbing items, painting, certain electrical work, and air-conditioning improvements. Several of these items appear to fall clearly within the bounds of the prior "improvements" agreement, and therefore appellees flatly refused to be held responsible for the electrical and air-conditioning costs. On this point, appellants informed the appellees that the deal was off. On October 7, appellees contacted appellants by letter asking if negotiations could be resumed. Thereafter, on October 15 appellees agreed to pay for the air-conditioning improvements, an item originally assessed to appellants under the "improvements" agreement, but refused to bear the electrical costs. On October 20, appellees received a written lease agreement prepared by appellants with an occupancy date of November 1. Appellees informed appellants that such an occupancy date was physically impossible due to the fact that negotiations had been terminated by appellees for approximately twenty days. At this point in time the painting was not completed, the carpeting was not installed, the plumbing was not completed, cabinets had not been installed and appellee's office equipment had to be transferred from appellee Koerner's own office. Koerner informed appellants that he could move in by December 1, but would not pay rent prior to that date. Appellants rejected a December 1 starting date and thereupon certain alleged obscene and threatening remarks were made to appellee Koerner who then refused to have anything further to do with the appellants and the suite.

Considering the fact situation as a whole, it is clear to us that appellees' ultimate refusal to perform was caused by unjustified conduct or bad faith on the part of appellants, and therefore pursuant to the mandate of Trollope, supra, appellants should not have recovered for any of the improvements. However, since no cross-appeal was taken by appellees, this Court is obliged to affirm the damage award as handed down by the trial court.

Appellants also contend that the trial court erred in failing to award them interest on their judgment from the time that the amounts became due and payable. In Arizona, interest does not begin to run on unliquidated claims until the rendition of the judgment. Schwartz v. Schwerin, 85 Ariz. 242, 336 P.2d 144 (1959). The case at bar involved an action in quasi-contract, an equitable remedy to recover the reasonable value of certain improvements, which is clearly an unliquidated claim. See Schwartz, supra. Therefore, the trial court properly awarded interest only from the date of judgment.

The appellants also contend that the trial court erred in ordering each side or party to bear its own costs. This con-

tention is well taken. A.R.S. § 12–341 reads as follows:

"The *successful* party to a civil action *shall* recover from his adversary all costs expended or incurred therein unless otherwise provided by law." (Emphasis added)

However, prior to amendment in 1970, Rule 54(f), Rules of Civil Procedure, 16 A.R.S. was quite clear that the awarding of ·costs was discretionary with the trial court. In 1970 the language of Rule 54(f), Rules of Civil Procedure, 16 A.R.S. was completely renovated so that it pertained only to the filing of statements of costs and objections thereto, thereby eliminating the inconsistent language dealing with the discretionary award of costs. It now reads as follows:

"A party who claims costs shall file a statement of his costs and serve a copy thereof on the opposing party. The statement shall be filed and served within ten days after judgment, unless for good cause shown the time is extended by the court. At any time within five days after receipt of the copy of the statement of costs, the opposing party may file objections to the statement serving a copy thereof on the party claiming such costs. The court shall pass upon the objections and by its order correct the statement of costs to the extent that it requires correction."

The State Bar Committee Notes make it clear that reference should be made to, A.R.S. § 12–341 through § 12–347 concerning when and to what extent a party has the right to an award of costs in a given action.

It is the opinion of this Court that A.R.S. § 12–341 controls the awarding of costs in the trial court, and its requirements are non-discretionary. Appellees point to In re Estate of Stavro, 17 Ariz.App. 257, 497 P. 2d 77 (1972), a decision of Department A of this Court, which states that notwithstanding the amendment to Rule 54(f), neither § 12–341 nor new Rule 54(f) eliminates the discretionary authority of a *pro-*

*bate* judge in awarding costs. We agree. However, Stavro was limited to a probate and guardianship case and is not generally applicable to civil cases. See In re Estate of Vermeersch, 15 Ariz.App. 315, 488 P.2d 671 (1971). A.R.S. § 12–341 makes the award of costs to the successful party in a civil action mandatory, while Rule 54(f) only permits the trial court to rule, where an objection is made, on which of the enumerated costs sought by the successful party are properly recoverable.

Thus the question becomes who was the "successful party" at the trial level? The appellants recovered $791.75 on their complaint, only a small percentage of the $6000-plus prayed for, while the appellees recovered 100% of the $500 prayed for in their counterclaim. Judgment was entered in favor of appellants in the amount of the difference, namely $291.75.

The general rule concerning the "successful party" is found in 20 C.J.S. Costs § 12 (1940), which states that where a counterclaim or setoff has been allowed, in whole or in part, the party in whose favor final judgment is rendered will be entitled to recover his costs. Thus a party will be "successful" if he obtains judgment for an amount in excess of the setoff or counterclaim allowed. See Distefano v. Hall, 263 Cal.App.2d 380, 69 Cal.Rptr. 691 (1968); Moss Construction Co. v. Wulffsohn, 116 Cal.App.2d 203, 253 P.2d 483 (1953); Wilkinson & Co. v. McKinley, 84 Cal.App.2d 100, 190 P.2d 35 (1948); Duvall v. Clark, 158 S.W.2d 565 (Tex.Civ. App.1941). This question has never been presented before in Arizona, and we are of the opinion that the general rule enumerated above is the proper interpretation of "successful party" in A.R.S. § 12–341. We hold that since the appellants' recovery of $791.75 exceeded that of appellees' compulsory counterclaim recovery of $500, the "net judgment" being in appellants' favor for $291.75, the trial court erred by not awarding the "successful" appellants their costs. Therefore, the judgment is reversed only to the extent of costs, and this case is remanded for the purpose of awarding ap-

**48**

pellants their costs in the trial court. In all other respects the judgment is affirmed.

JACOBSON, C. J., and HAIRE, J., concur.