118 Ariz. 18 (1977)
574 P.2d 486
Leonard ELLIS, Appellant,
v.
NEUROLOGICAL ASSOCIATES OF TUCSON, P.C., George W. Nash, M.D., Radiology, Ltd., R.O. Broome, M.D., Andre J. Bruwer, M.D., John A. Wilson, M.D., William E. Brownlee, M.D., Kent L. Pomeroy, M.D., and Grant Reed, M.D., Appellees. NEUROLOGICAL ASSOCIATES OF TUCSON, P.C., and George W. Nash, M.D., Cross Appellants,
v.
Leonard ELLIS, Cross Appellee.
Nos. 2 CA-CIV 2453 and 2 CA-CIV 2497.
Court of Appeals of Arizona, Division 2.
November 14, 1977.
Rehearing Denied December 20, 1977.
Review Denied January 17, 1978.
*19 Stuart Herzog, Tucson, for appellant/cross appellee.
Fish, Briney, Duffield & Miller, P.C. by Richard C. Briney, Tucson, for appellees/cross appellants Neurological Associates and Nash.
Everett, Bury & Moeller, P.C. by Leonard Everett and David C. Bury, Tucson, for appellees Radiology, Ltd., Broome, Bruwer and Wilson.
Robbins, Green, O'Grady & Abbuhl by Timothy C. Gerking, Phoenix, for appellee Brownlee.
Lesher, Kimble & Rucker, P.C. by Michael J. Gothreau, Tucson, for appellee Pomeroy.
Chandler, Tullar, Udall & Redhair by D.B. Udall, Tucson, for appellee Reed.
OPINION
HOWARD, Chief Judge.
This is an appeal from summary judgment entered in a medical malpractice case. The complaint was filed on November 8, 1973. After extensive discovery, motions for summary judgment were made by the appellees in July and December of 1976, which motions were granted by the trial court.
There is also a cross-appeal by Neurological Associates of Tucson, P.C. and George W. Nash, M.D., from the failure of the trial court to award them their costs below.
The determinative facts considered in the light most favorable to appellant are as follows. On November 9, 1969, appellant suffered a gunshot wound in the chest from a .22 calibre revolver which immediately caused paraplegia. He was taken to the emergency room at the Tucson Medical Center where he was examined by appellee Dr. Nash, a specialist in neurosurgery and a member of Neurological Associates of Tucson, P.C. Also present were appellee Dr. Brownlee, a specialist in thoracic surgery and appellee Dr. Reed, a surgeon. They all examined the x-rays which had been taken and after consultation with Drs. Reed and Brownlee, Dr. Nash decided that, although appellant did have some slight touch and position sense appreciation in the lower extremities, all the possible damage from the bullet had already been done and there was no point in trying to remove the missile. X-rays showed fragments of the bullet in the spinal column, and Dr. Nash considered appellant to be totally and immediately paraplegic from the onset of the wound. That being the case, Dr. Nash, who had treated at least 200 spinal cord injuries, did not operate to remove the fragments. He never operates on the spinal cord when the patient is totally and immediately paraplegic from the time of the onset in the cervical area. He stated:
"There are a few neurosurgeons who operate on them routinely, but admit in so doing they're doing it more to mollify *20 their own feelings because of the catastrophic injury, and that they want to assure the family that everything has been done.
I think the latter reason is ludicrous. I was trained in cervical spine injuries not to operate on anyone who is totally paraplegic. I felt the dangers prohibited this.... We were trained to operate on them if they were only partially, and most neurosurgeons follow this today, if they were only partially involved neurologically from the outset and then develop progressive systems of cord compression, suggesting the formation of a clot. The thinking has changed considerably over the last four or five years, in most spinal cord centers, all over the world, in Australia, in England, in Germany, no injuries of the thoracic spine or cervical spine are operated on because there's no proof that surgery offers anything to these patients.
It's a catastrophic illness, if damage has been done to the spinal cord from the onset, the chances are negligible of having it return and the risk of operation are real."
Dr. Nash stated that paraplegia can be caused from a functional severance of the spinal cord as well as an anatomical severance as the result of blast and shock.
On November 14, 1969, Dr. Goldfarb, an associate of Dr. Nash, performed a decompressive laminectomy on appellant and removed some of the missile fragments. This operation disclosed that the spinal cord was not severed, which indicated functional severance due to the blast effect of the missile.
There were other complications which required further surgery and appellant was eventually discharged from the hospital. His paraplegia is permanent and irreversible.
Appellant waited until 1973 to file this action because he did not know there was any malpractice involved in the handling of his case until he was so informed by Diana Sims, a registered nurse who counsels paraplegics on sexual problems. Miss Sims is also a paraplegic as a result of a gunshot wound.
Appellees moved for summary judgment on the grounds that there was no evidence of negligence. Appellant opposed summary judgment on the basis of the affidavit and depositions of two registered nurses, Diana Sims and Mary Heilman, and the affidavits of Dr. Louis Kettel, M.D., and Ivan Lytle, Ph.D., holder of a doctorate in physiology, a professor of biological sciences, and head of the department of general biology at the University of Arizona.
Sims, Heilman and Lytle all claimed to know the standards of care applicable to the doctors and concluded that they were negligent in the diagnosis and treatment of Mr. Ellis. Dr. Kettel, associate dean for academic affairs at the Arizona College of Medicine of the University of Arizona, gave no opinion as to the treatment and care of Mr. Ellis but rather explained the role of physiology in the basic medical sciences and the fact that it is taught in medical school.
Since appellant was unable to produce testimony of any medical doctor that the doctors were negligent, the court granted summary judgment. Appellant claims this was error, arguing that testimony by a person other than medical doctors will suffice. We do not agree. There is no question in this case but that expert opinion is necessary to prove the negligence of the doctors. The issues raised by appellant are the same ones raised and decided by us in the case of Rodriguez v. Jackson, 118 Ariz. 13, 574 P.2d 481 (App. (filed this date)). Diana Sims, Dr. Louis Kettel and Ivan Lytle also appeared as witnesses in the Rodriguez case. For the reasons stated in Rodriguez, we reject appellant's contention.
Appellant also contends that summary judgment should not have been granted because there was an issue of lack of informed consent, misrepresentation and concealment. He claims that Dr. Nash owed a duty to disclose to him that surgery could be done and that Dr. Nash had a policy of non-surgery so that at least he would have had the option of deciding whether to allow Dr. Nash to treat him or *21 to demand another physician. Assuming arguendo that the doctrine of informed consent is applicable here, we reject appellant's contention for the same reasons set forth in Rodriguez.
As for the cross-appeal, A.R.S. § 12-341 provides that "The successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law." The granting of costs pursuant to A.R.S. § 12-341 is mandatory and not discretionary in the case sub judice. Trollope v. Koerner, 21 Ariz. App. 43, 515 P.2d 340 (1973). Appellant contends that the case of In re Estate of Stavro, 17 Ariz. App. 257, 497 P.2d 77 (1972) allows the court to exercise discretion. We do not agree. As pointed out in Trollope v. Koerner, supra, Stavro was limited to a probate and guardianship case and is not generally applicable to civil cases.
The trial court erred in denying the cross-appellants their taxable costs in the sum of $1,196.86.
The judgment of the trial court in favor of Neurological Associates of Tucson, P.C., and George W. Nash, is modified by awarding them the sum of $1,196.86 as taxable superior court costs against appellant. In all other respects the judgments are affirmed.
STEVENS, J., and JACK T. ARNOLD, Superior Court Judge, concur.
NOTE: JAMES D. HATHAWAY and JAMES L. RICHMOND, JJ., having requested that they be relieved from consideration of this matter, HENRY S. STEVENS and JACK T. ARNOLD, JJ., were called to sit in their stead and participate in the determination of this decision.