139 Ariz. 72 (1983)
676 P.2d 1130
In re the Marriage of Rose COCKRILL, Petitioner-Appellee,
v.
Robert E. COCKRILL, Sr., Respondent-Appellant.
No. 1 CA-CIV 5798.
Court of Appeals of Arizona, Division 1, Department B.
September 27, 1983.
Reconsideration Denied December 6, 1983.
Review Denied February 22, 1984.
*73 Mitchell, Jensen & Timbanard, P.C. by Sheldon Mitchell and Kerry B. Moore, Phoenix, for petitioner-appellee.
Dushoff & Sacks by Jay Dushoff, and Thomas K. Irvine, Phoenix, for respondent-appellant.
OPINION
GREER, Judge.
The parties were divorced on April 5, 1977. Husband appeals from the trial court's decision that $75,000.00 of the stipulated $79,000.00 increase in the husband's farming operation is community property. The facts necessary to a resolution of this appeal were stated in Cockrill v. Cockrill, 124 Ariz. 50, 601 P.2d 1334 (1979), and need not be repeated here. In that case, our supreme court reversed the trial court's initial determination that the entire increase in value of the farming operation was community property, and in doing so rejected the "all-or-nothing" rule previously subscribed to in Arizona. Id. at 54, 601 P.2d at 1338. The supreme court's opinion set forth three approaches the trial court could use to apportion the increase in value between community and separate property. Upon remand, the parties agreed that no further testimony was necessary and that the matter could be decided by the court on the basis of the existing evidence, with the aid of memoranda of law and oral argument. The court adopted the *74 "reasonable value of the community's services" approach in apportioning $75,000.00 of the increased value to the community. Husband assigns the following errors on appeal:
1. The trial court erred by not adopting the "rental value" method;
2. There is insufficient evidence to support the court's apportionment; and,
3. The court erred by awarding prejudgment interest to the wife.
METHOD OF APPORTIONMENT
Initially, husband argues there is no evidence in the record to support the court's use of the "reasonable value of community services" method. This argument ignores the husband's own testimony regarding the two methods commonly used by farm management companies in charging clients. The court was justified in using either of these two methods to determine the reasonable value of the services performed by the community. In Cockrill v. Cockrill, the supreme court held that the trial court was not bound by any one of the methods it set forth. Id. Thus, we will not disturb the court's decision to use a particular method unless it is clearly an abuse of discretion. We find no abuse in this case because there is clearly evidence in the record supporting the method used by the court.
APPORTIONMENT BY COURT
The husband alternatively argues that there is insufficient evidence in the record to support the court's decision that the community services were worth $75,000.00. Thus, he concludes that the court must have improperly applied this method of apportionment.
We cannot determine from the amended judgment exactly what evidence the trial court relied upon in finding that the community services were worth $75,000.00. It is well settled, though, that a reviewing court must assume from any judgment the findings necessary to sustain it if such findings do not conflict with express findings and are reasonably supported by the evidence. Hueg v. Sunburst Farms (Glendale) Mutual Water and Agricultural Co., 122 Ariz. 284, 594 P.2d 538 (App. 1979). We conclude that the record does contain evidence which reasonably supports the trial court's apportionment.
Husband testified that a management firm hired to perform services similar to those performed by the husband would charge $50.00 to $100.00 per day. The husband points out that he testified he only worked a total of 140 to 200 days on the farm while they were married. Thus, using these figures and the per diem method, his services for two and one-half years would be worth a maximum of $20,000.00. However, there was evidence from which the court could reasonably conclude that the husband worked on the farm more than 200 days over the two and one-half year period. The wife testified, for instance, that she would often get up at 4:30 a.m. to fix his breakfast before he went to work on the farm. It is also apparent that, as with any business, there is more to operating the farm than just working in the field. The wife also testified that the husband negotiated financing for the farming operation, paid the bills, hired work crews, and did various other paper work. It is clear from the record that the court's award was partly based upon the fact that the husband, as an experienced farming entrepreneur, was worth more to the farming operation than the services of a management firm. We agree.
Finally, the record shows that the wife also contributed to the operation of the farm. She testified that she helped harvest the cotton and run a cotton machine, although perhaps only a limited number of times. The wife also testified that she was the one who arranged to have the farm listed for sale at one point during the marriage. Thus, the court could have properly placed a value upon the wife's services.
The supreme court's ruling in Cockrill v. Cockrill, supra, does not change the well established rule that the trial court is given broad discretion in the apportionment *75 of community property and that no abuse of discretion will be found as long as the court acts equitably. Neal v. Neal, 116 Ariz. 590, 570 P.2d 758 (1977). It is our opinion the court acted equitably in concluding that the community's services in operating the farming operation over a two and one-half year period were worth $75,000.00.
INTEREST
We do agree with the husband that the court improperly awarded interest to the wife from the date of initial judgment. The supreme court's ruling in Cockrill v. Cockrill reversed the trial court's judgment, relegating any award to the wife to that of an unliquidated claim. In Arizona, interest does not begin to run on unliquidated claims until the rendition of the judgment. Trollope v. Koerner, 21 Ariz. App. 43, 515 P.2d 340 (1973). Although it might be said that the wife had more than a mere claim to a share of the increased value of the farm it was not at all clear what amount she was entitled to receive. Long ago in Schwartz v. Schwerin, 85 Ariz. 242, 250, 336 P.2d 144, 149 (1959), our supreme court elucidated the reason behind our rule: "If the claim is unliquidated and is in dispute no interest is allowed upon the theory that the person liable does not know the sum he owes and therefore can be in no default for not paying." We can think of no reason to justify a different rule in dissolution cases. As in any other civil matter where the rule normally applies, it would be unfair to charge the husband interest when he could not have accurately determined what sum, if any, he would ultimately be held liable to pay. Thus, the wife is only entitled to interest from the date of the second judgment.
Accordingly, the judgment of the trial court is affirmed except as to the date the interest was to begin to accrue.
FROEB, P.J., concurs.
GRANT, Judge, concurring in part, dissenting in part:
Although I concur with the majority as to the disposition of all other issues I disagree on the question of interest. It is my opinion that the interest should run from the date of the dissolution. The husband has had the use of and the beneficial interest from the farm which has been in his possession throughout the duration of these legal proceedings  through the first appeal, the retrial on remand and this, the second appeal. The interest on the second judgment should begin to run from the date the parties' marriage was dissolved.
This question is one which has long been neglected by both the bench and the bar in Arizona. The cases cited in the majority opinion are of little help since they are not dissolution cases. The judgment in this case was not of a "res  creating" nature, it did not fix for the first time the value of the interest harmed or damages sustained. The judgment merely returned to the wife that which was already hers. In such a case the interest should run, not from the time when the exact amount of such property is determined, but from the date of entry of the decree of dissolution which separates the property interests of the two parties. It should be remembered that these property interests existed before the dissolution and have continued to exist throughout these proceedings. It is from the dissolution date forward that the husband in possession of the property has been unjustly enriched with the consequent denial of possession and enjoyment of the property to the wife.
After the decree of dissolution the retention by one spouse of property belonging to the other is wrongful and equity demands that a remedy be provided therefor. Accordingly, it is appropriate in a dissolution case to award prejudgment interest, that is interest from the date the marriage was dissolved regardless of the date when the property division is reduced to an exact figure in dollars and cents. In this situation prejudgment interest is not a penalty but is money paid for the use of money.
Recognition of the right to interest from the date of the dissolution of the marriage *76 is based on sound principles of equity and justice. Beneficial effects of such a recognition might well be: (1) to give plaintiffs recompense for lost possession and enjoyment of their property, (2) to require defendants to pay for the use of money which they are ultimately required to pay by judgment and from which they have made financial profit, (3) to make it less profitable for defendants to delay the resolution of dissolution cases for as long as possible which gains them the free use of their spouse's money and property in the interim, and (4) to encourage settlements which may be an effective means of expediting court calendars.
The United States Supreme Court said in regard to prejudgment interest in a divorce action in De La Rama v. De La Rama, 241 U.S. 154, 36 S.Ct. 518, 60 L.Ed. 932 (1916), referring to the date of the divorce decree:
But that was the day at which, but for the delays of the law, the wife would have received her dues, the husband has had the use of the money meanwhile, and we are not prepared to say that it was not at least within the sound discretion of the court to allow the charge, notwithstanding the success of the husband in reducing the amount on appeal.
Division Two of this court has allowed interest on the purchase of the wife's share of stock from the date of the original divorce decree. In McCune v. McCune, 120 Ariz. 402, 586 P.2d 651 (App. 1978), the court said, speaking of the wife:
She contends that she should receive interest on the unpaid principal balance from the date of the original decree, January 5, 1976. We agree ... in the absence of a provision for interest on the deferred amount, appellant is forced to make an interest free loan to the appellee. This we deem inequitable in effectuating a division of community property.
Similarly in the case of Johnson v. Johnson, 250 Minn. 282, 84 N.W.2d 249 (1957), the court held:
It is equally well settled that interest may be charged on an alimony judgment from the date of the original award, for to hold otherwise would permit the judgment debtor to delay an appeal until the prevailing party settled for less than the whole award. The plaintiff has had the use of the money rightfully belonging to defendant since February 21, 1947, [date of original divorce decree] and we see no reason to overturn the trial court's decision allowing interest from that date. To withhold the use of the money for a period of ten years without interest would lessen the amount of the award.
I would therefore affirm the trial court's award of interest to the wife on her share of the community assets from the date of the original dissolution decree.