837 P.2d 1177

In the Matter of the ESTATE OF
Evette MILES, a Minor.

Sheila MILES, Conservator,
Petitioner/Appellee/Cross–
Appellant,

v.

MARICOPA COUNTY,
Claimant/Appellant/Cross–Appellee.

No. 2 CA–CV 92–0046.

Court of Appeals of Arizona,
Division 2, Department A.

April 14, 1992.

Review Denied Oct. 20, 1992.

Kleinman, Carroll, Lesselyong & Novak by Frank E. Lesselyong, Phoenix, for petitioner/appellee/cross-appellant.

Richard Romley, Maricopa County Atty. by Gordon J. Goodnow, Jr. and Roderick D. Mac Millan, Phoenix, for claimant/appellant/cross-appellee.

## OPINION

HOWARD, Judge.

This is an appeal by Maricopa County from a judgment awarded to it by the trial court for medical care rendered to an indigent. The trial court, sitting without a jury, first awarded Maricopa County the full amount of its lien, $103,688.56. It subsequently granted the conservator a remittitur and reduced the judgment to $84,416.78.

The County contends the trial court erred by (1) refusing to rule on the validity of its lien under A.R.S. § 11–291(F); (2) denying prejudgment interest; (3) denying its taxable costs; (4) denying it interest on the judgment at the legal rate of 10 percent; and (5) denying its reasonable attorney's fees. We agree and reverse.

On April 12, 1984, Evette Miles, then age four, nearly drowned in a swimming pool. As a result, she suffered severe brain damage. She was and is quadriplegic, comatose and blind. As an indigent, Evette received hospital care at the expense of the County and the Arizona Health Care Cost Containment System (AHCCCS).

Evette was hospitalized at St. Joseph's Hospital until April 25, 1984, when she was transferred to Maricopa Medical Center. She was discharged from Maricopa Medical Center in early June 1984 and transferred to the Phoenix Nursing and Convalescent Center (PNCC) because of the long-term care services which she needed and which at the time were only available at PNCC. Evette stayed at PNCC until July 1986, when she was transferred to a smaller facility, the Hacienda De Los Angeles (Hacienda), where she resided until May 18, 1988, at which time she left the Maricopa County long-term care system because of a large personal injury settlement.

The County filed two liens to cover the cost of the patient's care at the two privately-licensed nursing homes, PNCC and Hacienda. These liens were for the period beginning in early June 1984 through May 18, 1988, when the patient was discharged from Maricopa County's Indigent Care Program, due to financial ineligibility as a result of her $935,000 personal injury recovery. The County's first lien, filed and recorded October 26, 1987, in the amount of $87,518.56, covered the period to that date and was intended to be finalized later, when the patient was actually discharged from Maricopa's Indigent Care Program. The patient remained in the County system and was discharged on May 18, 1988. On June 17, 1988, the County filed and recorded its final lien in the amount of $103,418.56.

After the conservator of the minor's estate refused to approve the County's claim, this suit was commenced.

## I.

Section 11–291(F) gives the County a lien for the cost of providing long-term care services to indigents sick in the County. It provides:

> F. The county is entitled to a lien for the charges for hospital or medical care and treatment of an injured person or the provision of long-term care services for which it is responsible pursuant to subsection A of this section or § 11–293, on any and all claims for damages accruing to the person to whom hospital or medical service is rendered, or to the legal representative of such person, on account of injuries giving rise to such

claims and which necessitated such hospital or medical care and treatment. Recovery of charges pursuant to this subsection shall be in a manner as nearly as possible the same as the procedures prescribed in § 36–2915.

Section 36–2915(B) requires the lien to be filed "... within thirty days after the patient is discharged from a hospital *or the medical care and treatment are rendered ....*" (Emphasis added.) Here the lien was timely recorded.

█ The County complains that instead of ruling on the validity of its lien, the trial court proceeded to trial under § 12–962, a statute dealing with the recovery of the cost of medical care by the state or any of its political subdivisions when the treatment is for a person tortiously injured by a third person. Section 12–962(A) allows the County to recover from "... the third person or the claimant the reasonable value of the medical care and treatment." And, § 12–962(B)(3) provides that the County can:

> Recover the cost of care from the injured or diseased person or his estate to the extent that such person has received money in settlement of his claim or satisfaction of a judgment against the third party.

The reason that the County wanted § 11–291(F) to apply rather than § 12–962 is that it believed the reasonableness of the amount of its lien cannot be challenged when the County brings an action under § 11–291(F) to enforce its lien.

We agree that the trial court erred in proceeding under § 12–962 instead of merely ruling on the validity of the lien under § 11–291(F) because § 12–964 provides that § 12–962 does not affect any other provision of law providing for recovery by the state or any of its subdivisions for the cost of care and treatment described in § 12–962. We do not agree, however, that the reasonableness of the charges cannot be attacked when the County sues to enforce its lien pursuant to § 11–291(F).

In any event, all the evidence from the expert witnesses was that the charges incurred in both the PNCC and Hacienda were reasonable and necessary. The conservator contends that the difference between the charges for care at PNCC, $6,500 per month, and the cost of care at Hacienda, $3,100 per month, is evidence that the charges at PNCC were unreasonable. We do not agree. Neither the facilities nor the services are the same. Moreover, the rate charged at PNCC was pursuant to a negotiated contract which was for a lower rate than the state-allowed, "posted rate" which private patients were charged, and it should be remembered that PNCC was the only facility available at the time for a patient such as Evette. Thus, there was no evidence which showed that the charges at PNCC were unreasonable.

█ The conservator contends that § 11–291(F) does not apply because the accident occurred prior to the May 5, 1984 amendment which first provided for lien recovery rights. We do not agree. It is the date that the services were provided which determines the statute's applicability, not the date of the accident. The lien here is for services rendered after the effective date of the statute.

## II.

█ The trial court erred when it refused to grant taxable costs and postjudgment interest. Section 12–341 provides that "the successful party to a civil action *shall* recover from his adversary all costs expended or incurred therein unless otherwise provided by law." (Emphasis added.) Even if the County had obtained judgment in a much lesser amount it still would have been entitled to its costs. *Barth v. A. & B. Schuster Co.,* 25 Ariz. 546, 220 P. 391 (1923). The trial court's discretion in awarding costs goes only to the question of which items to allow, not to the actual awarding of costs, which is mandatory in favor of the successful party. *Trollope v. Koerner,* 21 Ariz.App. 43, 515 P.2d 340 (1973).

The County's only listed taxable costs were for the taking of five depositions. Section 12–332(A)(2) lists the costs of tak-

ing depositions as a taxable cost in the superior court.

Section 44–1201 provides that interest on a judgment shall be at the rate of 10 percent per annum. The trial court has no discretion to refuse to award such interest.

### III.

A creditor is entitled to prejudgment interest on its claim if the amount sought is liquidated. *Costanzo v. Stewart Title & Trust of Phoenix*, 23 Ariz.App. 313, 533 P.2d 73 (1975). A claim is liquidated if the evidence provides data which, if believed, allows calculation of the amount with exactness, without reliance upon opinion or discretion. *Id.*

The amount of the claim in this case was capable of exact calculation on September 12, 1988, the date from which prejudgment interest is claimed. The award of prejudgment interest is a matter of right and not a matter of discretion. *Suciu v. AMFAC Distributing Corp.*, 138 Ariz. 514, 675 P.2d 1333 (App.1983). The trial court erred by not awarding prejudgment interest.

### IV.

The trial court did not err in refusing to award attorney's fees in spite of an alleged contract by the conservator with the County to reimburse the County because the County did not sue on the contract but sued under the lien statute. Thus, the action does not arise out of contract but arises out of a statute and § 12–341.01(A) does not apply.

The judgment is reversed and the trial court is ordered to enter judgment in favor of Maricopa County for $103,688.56 plus costs, prejudgment interest, and post-judgment interest.

LIVERMORE, C.J., and LACAGNINA, P.J., concur.