938 P.2d 95

Robert L. BARNES and Janice E. Barnes, dba Bob Barnes Farms, Plaintiffs/Appellants,

v.

SANDOZ CROP PROTECTION CORPORATION, a Delaware corporation, Defendant/Appellee.

No. 2 CA–CV 96–0212.

Court of Appeals of Arizona, Division 2, Department A.

Jan. 29, 1997.

Redesignated as Opinion and Publication Ordered March 14, 1997.

Review Granted June 24, 1997.*

Beale & Micheaels, P.C. by Michael A. Beale and Elizabeth C. Painter, Phoenix, for Plaintiffs/Appellants.

Lewis and Roca LLP by Susan Freeman and Sheila Carmody, Phoenix, for Defendant/Appellee.

* Jones, Vice C.J., recused himself and did not participate in the determination of this matter.

OPINION

DRUKE, Chief Judge.

Robert and Janice Barnes, doing business as Bob Barnes Farms ("the farm"), sued Sandoz Crop Protection Corporation to recover for damage to its cotton crop allegedly caused by use of Zorial, an herbicide Sandoz manufactured. The farm alleged claims of strict products liability, negligence, and breaches of various express and implied warranties. Sandoz moved for summary judgment, arguing that the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136 through 136y, preempted the negligence and warranty claims. Sandoz also argued that the strict liability claim failed for lack of evidence. The trial court granted summary judgment, ruling that FIFRA preempted all the claims. This appeal follows the trial court's denial of the farm's motion for reconsideration. We affirm.

In its products liability claim, the farm alleged that the Zorial it used "was defective and unreasonably dangerous in that it destroyed [the] entire crop." While the trial court granted summary judgment on preemption grounds, we need not decide the correctness of its decision because summary judgment can be affirmed for a different reason. See Gary Outdoor Advertising Co. v. Sun Lodge, Inc., 133 Ariz. 240, 650 P.2d 1222 (1982) (correct result by trial court will be affirmed even if based on different reason).

In Gosewisch v. American Honda Motor Co., Inc., our supreme court set forth the following requirements for a strict products liability claim:

[T]he plaintiff must show that the product is in a defective condition and unreasonably dangerous, the defective condition existed at the time the product left the defendant's control, and the defective condition is the proximate cause of the plaintiff's injury. Three types of defects can result in an unreasonably dangerous product: (1) design defects, (2) manufacturing defects, and (3) informational defects encompassing instructions and warnings.

153 Ariz. 400, 403, 737 P.2d 376, 379 (1987) (citations omitted).

The farm has pled design defect. To avoid summary judgment, therefore, the farm was required to present sufficient evidence to show that Zorial was defective, that the defect was unreasonably dangerous, and that the farm's injuries were proximately caused by the defect. Orme School v. Reeves, 166 Ariz. 301, 310, 802 P.2d 1000, 1009 (1990) (trial court must grant summary judgment "where the proponent presents no evidence from which a reasonable jury could find, directly or by inference, that the possibilities favored the proponent").

The farm retained two experts, Dr. John Chernicky and Samuel Stedman, who both testified at deposition that Zorial should not be used on cotton grown in Arizona. Neither expert stated, however, that Zorial was so defectively designed that it should not be used on cotton grown anywhere. Indeed, Stedman agreed that Zorial should not be removed from the market. "[I]t's a product that we need to continue, continue working with," he said, "but we need to make sure the recommendation is correct." Dr. Chernicky's testimony contained the followed colloquies:

Q. Is it your opinion that Zorial should not be used at all in Arizona cotton?

[Dr. Chernicky]: Correct.

Q. And on what do you base that opinion?

A. Its potential to injure cotton.

Q. Do you know that the amount of Zorial in 1994 was double the amount used in Arizona cotton in '93?

A. I wasn't aware of that.

Q. Would that be important to you?

A. No.

Q. So, in your opinion, Zorial should not be used at all in Arizona on cotton?

A. It's my opinion.

\* \* \* \* \* \*

Q. On what do you base this opinion that Zorial has no place in Arizona cotton?

A. Basically, on the fact that—several things. One is, it's not efficacious at the rates that it's used. Though you increase the margin of safety by reducing the rates, you drop tremendously the amount of effi-

cacy achieved with the material. Therefore, you're spending expensive money on [a] product that really doesn't do what the grower buys it for, and that's to control nutsedge.

\* \* \* \* \* \*

Q. ... Do you have any other specific criticism of the University of Arizona's research data on Zorial?

A. No, I wouldn't say so.

\* \* \* \* \* \*

Q. Going back to your opinions in this case, if I understand them, and I want to make sure I've got them all, that you do not believe Zorial should be used in Arizona cotton because you don't believe it to be efficacious? Correct?

A. Correct.

Q. And that you saw some personal observations of bad results with Zorial in '93.

A. Correct.

■ On this record, we find the farm established, at most, that Zorial was not "efficacious." A product that does not produce a desired effect, that is, does not work as advertised, is not necessarily designed defectively or unreasonably dangerous. The farm failed to show that Zorial was either.

Moreover, we note that the evidence of Zorial's inefficacy is itself inconsistent. Dr. Chernicky acknowledged that some Arizona cotton growers obtained favorable results with Zorial, though he believes they did so by disregarding the manufacturer's instructions and "working on their own to figure the safest way to use it." In sum, the farm's evidence of strict products liability "ha[s] so little probative value, given the quantum of evidence required, that reasonable people could not agree with the [farm's] conclusion" that Zorial was defectively designed. *Orme School,* 166 Ariz. at 309, 802 P.2d at 1008. Accordingly, summary judgment was properly granted on the farm's design defect claim.

The farm's remaining claims are contingent to varying degrees on its design defect claim. While we have concluded that the evidence is insufficient to withstand Sandoz's motion for summary judgment on that claim, we agree with the trial court that FIFRA preempts these remaining claims.

■ FIFRA is a comprehensive federal statute regulating the use, sale, and labeling of herbicides. The parties do not dispute that Zorial is an herbicide within the meaning of FIFRA and that its label was approved by the Environmental Protection Agency under FIFRA's statutory scheme. FIFRA preempts "'any state common law cause of action that rests on an alleged failure to warn or convey information about a product through its label.'" *Burt v. Fumigation Service and Supply, Inc.,* 926 F.Supp. 624, 630 (W.D.Mich.1996), *quoting In re Du-Pont–Benlate Litigation,* 859 F.Supp. 619, 622 (D.Puerto Rico 1994).

■ The farm's negligence claim alleged that Sandoz owed "a duty of reasonable care in all aspects of the design, testing, manufacturing, promotion, distribution and supply of" Zorial "and to ensure that the consuming public, including [the farm], obtained accurate information regarding both the safety and characteristics of the product." The claim further alleged that Sandoz breached these duties by "advis[ing]" it to treat the cotton crop with Zorial, "knowing that the [c]rop would likely suffer than not from its use." The farm contends that such advice gave rise to a claim for negligent misrepresentation, but there is no evidence that Sandoz advised the farm in any way inconsistent with the instructions on the Zorial label. Because this claim relies on the contention that the information Sandoz supplied about the herbicide was inadequate, i.e., Sandoz failed to warn that Zorial would in fact, harm, not help, the cotton crop, it "'necessarily challenge[s] the adequacy of the warnings provided on the product's labeling or packaging,'" and is therefore preempted. *Taylor AG Industries v. Pure–Gro,* 54 F.3d 555 (9th Cir.), *quoting Papas v. Upjohn Co.,* 985 F.2d 516, 519 (11th Cir.) ("*Papas II*"), *cert. denied,* 510 U.S. 913, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993).

■ The third claim, based on A.R.S. § 47–2315, alleged that Sandoz breached the implied warranty for fitness because it "informed" the farm that Zorial would meet its "herbicide need." In *Taylor AG Industries,* the Ninth Circuit Court of Appeals affirmed the district court's ruling that FIFRA preempted the Arizona cotton farmers' state law claims against Pure–Gro, the manufac-

turer of two defoliant chemicals, holding, in pertinent part, that FIFRA preempted implied warranty claims, including those based on § 47–2315, "because the asserted implied warranties operate by state law to impose labeling requirements indirectly." 54 F.3d at 563. We adopt this reasoning here. If Sandoz, like Pure–Gro, "were to be liable for breach of an implied warranty of fitness for a particular purpose, that liability would be imposed by a state law requirement rather than by any voluntary action on the part of [Sandoz]. Therefore, an implied warranty of fitness for a particular purpose also constitutes a state law requirement and is preempted by FIFRA." *Id.* (citation omitted). Moreover, "to the extent the implied warranty claim depends upon inadequacies in labeling or packaging, FIFRA section 136v pre-empts the claim." *Papas II,* 985 F.2d at 520.

■ The farm's final claim alleged that Sandoz "expressly or impliedly warranted" that Zorial "was of merchantable quality when in fact it was not, that it was fit for customary use when in fact it was not, and that it was safe to cotton when applied by [Sandoz's] instructions when it was not and otherwise [would] meet [the farm's] needs when it did not." Additionally, the farm alleged these warranties were breached by "recommending, selling, distributing, designing, developing, manufacturing and supplying Zorial, a defective product...." As we concluded above, the evidence is insufficient to show that Zorial is defective. In any event, the record contains no evidence of how Sandoz breached these warranties beyond the farm's assertion—which we hold is a disguised labeling claim—that Zorial was not fit for use in Arizona. Consequently, these warranty claims are preempted by FIFRA. *See Taylor AG Industries; Grenier v. Vermont Log Buildings, Inc.,* 96 F.3d 559 (1st Cir. 1996).

Affirmed.

PELANDER, P.J., and LIVERMORE, J., concur.