42 P.3d 598

William DILLON and Tamara Dillon, husband and wife, Plaintiffs/Appellants,

v.

ZENECA CORPORATION, a corporation; United Horticultural Supply, a corporation; and United Agri Products, a corporation, Defendants/Appellees.

No. 2 CA–CV 2000–0207.

Court of Appeals of Arizona, Division 2, Department B.

Feb. 26, 2002.

Leonard Felker Altfeld Greenberg & Battaile, P.C., by David J. Leonard, Tucson, Darla Mondou, Upton, Massachusetts, for plaintiffs/appellants.

Quarles & Brady Streich Lang, LLP, by Raymond R. Cusack and Timothy M. Medcoff, Tucson, for appellee, Zeneca Corporation.

Snell & Wilmer, L.L.P., by Sheila Carmody and Stephen T. Portell, Phoenix, for appellees, United Horticultural Supply and United Agri Products.

*OPINION*

ESPINOSA, Chief Judge.

¶ 1 Plaintiffs/appellants William and Tamara Dillon asserted causes of action for breach of express warranty, misrepresentation, and strict product liability arising from damage to their alfalfa crop allegedly caused by Eptam–7E, an herbicide manufactured by defendant/appellee Zeneca Corporation, sold by defendants/appellees United Agri Products and United Horticultural Supply, and recommended by defendant Gerald Wheeler, an employee of United Horticultural Supply.[1] Appellees moved separately for summary judgment on the ground that the Dillons' state law causes of action were preempted by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C.A. §§ 136 through 136y (West 1999). The Dillons argue the trial court erred in granting those motions, claiming FIFRA does not preempt their state law cause of action for failure to warn and other state law damage claims based upon off-label statements Wheeler made. For the reasons set forth below, we affirm.

### Facts and Procedural History

¶ 2 We view the evidence and all reasonable inferences therefrom in the light most favorable to the party opposing the motion below. *Hill–Shafer Partnership v. Chilson Family Trust*, 165 Ariz. 469, 799 P.2d 810 (1990). The Dillons began farming in 1997 and lost their first alfalfa crop to weed infestation. Before they planted their 1998 crop, the Dillons sought advice about weed control from Tom Simmons, a neighboring farmer, who took UAP employee Wheeler to the Dillons' ranch to answer their questions about herbicides. The Dillons purchased Eptam 7–E, relying on Wheeler's assertions that there would be no waiting time between application and planting as with other herbicides and that the product would kill all weeds except Malva.[2] The Dillons hired Simmons to apply the product to their land. Simmons testified at a deposition that he had followed the manufacturer's instructions on the Eptam 7–E label in treating the Dillons' land. The alfalfa seeds were planted immediately thereafter. About a month later, the Dillons' employee noticed that several portions of the crop appeared to be dying.

¶ 3 The Dillons told Wheeler they were having poor seed germination. Wheeler avowed that, after interviewing William Dillon and Simmons and after inspecting the plants, he had told William that "there was evidence that the plants had been exposed to Zeneca's Eptam 7–E" and that "[o]ften plants grow out of the symptoms from the exposure." A few days later, Wheeler took Zeneca representative Clary Childers to the Dillon ranch to further investigate the complaint. The Dillons refused Childers's offer to reseed their fields and requested that Zeneca reimburse them $63,000. In mid-June, Dr. William McCloskey of the University of Arizona inspected the Dillons' alfalfa fields and concluded the damage to the plants had not been caused by Eptam 7–E.

¶ 4 The Dillons sued Zeneca and UAP, alleging causes of action for breach of express warranty and misrepresentation and asserting that Zeneca's limitation of remedy was unconscionable. In Zeneca's and UAP's separate motions for summary judgment, they argued that FIFRA preempts all state law causes of action, such as those asserted by the Dillons, that are inconsistent with a label approved by the Environmental Protection Agency (EPA). *See* 7 U.S.C.A. § 136v(b). The Dillons responded that FIFRA does not preempt their claims for common law misrepresentation, breach of an express warranty, strict product liability, and

---

1. United Agri Products is a retailer of horticultural products, and United Horticultural Supply is the name of its Tucson store. In this decision, "UAP" refers collectively to both companies and, when appropriate, to Wheeler.

2. At oral argument, the Dillons challenged the accuracy of this statement, claiming that they had purchased Eptam 7–E based on Wheeler's assertions that it was a superior product and better-suited to their purpose. Our review of the record finds no support for this claim. In fact, in her deposition, Tamara stated that she could not remember anything that Wheeler had specifically said during their conversation other than the two statements we have cited. And, in her affidavit, Tamara specifically challenged those two statements as "unreliable and a misrepresentation."

violations of the Arizona Uniform Commercial Code because these claims are not based upon inadequate labeling or packaging. Relying on *Taylor AG Industries v. Pure–Gro,* 54 F.3d 555 (9th Cir.1995), and *Barnes v. Sandoz Crop Protection Corp.,* 189 Ariz. 46, 938 P.2d 95 (App.1997), the trial court concluded that the Dillons' causes of action were preempted by 7 U.S.C.A. § 136v(b). This appeal followed.

## Standard of Review

¶ 5 Summary judgment is proper when the evidence presented by the party opposing the motion has so little probative value, given the required burden of proof, that reasonable jurors could not agree with the opposing party's position. *Orme School v. Reeves,* 166 Ariz. 301, 802 P.2d 1000 (1990). We review *de novo* whether genuine issues of material fact exist and whether the trial court erred in applying the law. *Gonzalez v. Satrustegui,* 178 Ariz. 92, 870 P.2d 1188 (App.1993).

## FIFRA Preemption

¶ 6 Under the doctrine of preemption, federal laws supersede conflicting state laws. U.S. Const. art. VI, cl. 2; *Defenders of Wildlife v. Hull,* 199 Ariz. 411, 18 P.3d 722 (App.2001). Federal preemption exists "if the federal statute expresses a clear intent to preempt state law." *State v. McMurry,* 184 Ariz. 447, 449, 909 P.2d 1084, 1086 (App. 1995); *see also Hernandez–Gomez v. Volkswagen of America, Inc.,* 201 Ariz. 141, 32 P.3d 424 (App.2001). Whether the Dillons' causes of action are preempted by FIFRA is a question of law we review *de novo. National Bank of Commerce v. Dow Chemical Co.,* 165 F.3d 602 (8th Cir.1999); *see also City of Tucson v. Rineer,* 193 Ariz. 160, 971 P.2d 207 (App.1998) (whether city ordinance preempted by state law reviewed *de novo* ).

¶ 7 Before any pesticide, including an herbicide, can be sold in the United States, it must be registered with the EPA pursuant to FIFRA. 7 U.S.C.A. §§ 136(t) and 136(u), 136a. As part of the registration process, the labels of such products must be approved by the EPA and are subject to a comprehensive regulatory scheme that strictly governs their content. *See Andrus v.*

*AgrEvo USA Co.,* 178 F.3d 395 (5th Cir. 1999); *Worm v. American Cyanamid Co.,* 5 F.3d 744 (4th Cir.1993); 7 U.S.C.A. § 136a; 40 C.F.R. § 156.10. After the EPA approves an herbicide label, "FIFRA expressly provides for a defense, arising from preemption, against certain state law claims." *National Bank of Commerce,* 165 F.3d at 608. The FIFRA section limiting the states' authority to regulate pesticides, 7 U.S.C.A. § 136v, provides:

### (a) In general

A state may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

### (b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

Consequently, any state law cause of action that challenges the adequacy of a pesticide label or that is premised on a failure to warn would impose an additional or different labeling requirement and is thus preempted. *Andrus; National Bank of Commerce; Taylor AG Indus.; Barnes.*

## Breach of Express Warranty

¶ 8 The Dillons argue that their breach of express warranty cause of action is not preempted because it was based on off-label statements made by Wheeler. In deciding to purchase Eptam 7–E, the Dillons relied upon Wheeler's voluntary assertions that "there is no waiting time to plant after spraying, *as with other herbicides* " and that "Eptam 7–E will kill most weeds except Malva." The first statement, however, merely reiterates language from the planting directions on the label that states, "For preplanned applications, seeding should be done as soon as possible after treatment to obtain a maximum period of weed control." For use on alfalfa in the western region, which includes Arizona, the label advises: "Apply and incorporate 2¼ to 4½ pints EPTAM 7–E per acre *just before planting.*" (Emphasis added.) Directions for use are required to

be on the label and must be approved by the EPA. 7 U.S.C.A. § 136a(c)(5); 40 C.F.R. § 156.10(i). Accordingly, FIFRA preempts any cause of action based on Wheeler's first statement. *See Kuiper v. American Cyanamid Co.*, 131 F.3d 656 (7th Cir.1997); *Taylor AG Indus.*

¶ 9 The Dillons argue that Wheeler's second off-label statement about Eptam 7–E's efficacy does not mirror any language on the label and that it gave rise to an express warranty cause of action that is not preempted, relying on *Cole v. Central Valley Chemicals, Inc.*, 9 S.W.3d 207 (Tex.App.1999). In that case, the Coles purchased a particular herbicide in reliance on a salesman's recommendations that it would provide better weed control and cost less than other herbicides they had used in the past. But, contrary to the Dillons' assertion that the Coles' crop was damaged by application of the herbicide they had purchased, that case stated that the herbicide "failed to control the weeds in the [plaintiffs'] corn crop and, as a result, the corn yield was severely reduced and [they] suffered a monetary loss." *Id.* at 209. In contrast, the Dillons' claimed economic loss is not the result of Eptam 7–E's failure to control weeds in their field but its alleged harm to the alfalfa plants themselves. Thus, even assuming Wheeler's statement was an off-label express warranty,[3] the Dillons suffered no damage as a result and their reliance on *Cole* is misplaced.

¶ 10 The Dillons further argue that an express warranty Zeneca made on the label is actionable under A.R.S. § 47–2313, claiming it was voluntarily assumed and not required by FIFRA. They specifically point to a portion of the label about conditions of sale and limited warranty that states in pertinent part: "The Directions for Use of this product are believed to be reliable and should be followed carefully." Under § 47–2313(A), a seller can create an express warranty in the following ways:

1. Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

2. Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

3. Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

¶ 11 We fail to see how the label statement is "self-serving" and agree with Zeneca that "[i]t is very doubtful this language ... creates an express warranty, as it refers to the manner of application and not to the results of application." Clearly, subsection 3 does not apply. And the statement does not describe the product, as subsection 2 requires. By making this statement, Zeneca did not create an express warranty under subsection 1. The statement is not an affirmation of fact but merely an opinion about the reliability of the directions. Nor is it a promise relating to the product, but words leading the user to apply the product correctly. Contrary to the Dillons' assertion, nothing in the statement claims or implies superiority of the product.

¶ 12 Moreover, as noted above, the directions are required to be approved by the EPA, and such a statement about their reliability and an admonishment to follow them carefully does not warrant the product's performance or safety. Additionally, even assuming the statement created an express warranty, the cause of action is preempted. *See National Bank of Commerce* (breach of express warranty claim based on pesticide label preempted); *Grenier v. Vermont Log Buildings, Inc.*, 96 F.3d 559 (1st Cir.1996) (same); *Taylor AG Indus.* (same). Accordingly, the trial court did not err in granting appellees' motions for summary judgment on the ground that the Dillons' express warranty cause of action was preempted.

**Fraudulent Misrepresentation**

¶ 13 The Dillons also contend that Wheeler's off-label statements constituted

---

**3.** The list of weeds the Eptam 7–E label states it will control does not include Malva.

fraudulent misrepresentation.[4] A cause of action for fraudulent misrepresentation requires a false material representation made with the speaker's knowledge of its falsity or ignorance of its truth and with the intent that it be acted upon by the listener; the listener's ignorance of its falsity, reliance on its truth, and right to rely on its truth; and consequent and proximate injury. *Davis v. First Nat'l Bank of Arizona,* 124 Ariz. 458, 605 P.2d 37 (App.1979). As noted above, Wheeler's statement that Eptam 7–E requires no waiting time between application and planting merely reiterates the directions on the label, and any cause of action based on the statement is therefore preempted. *Taylor AG Indus.; Barnes.* Furthermore, as also noted above, the Dillons' claimed loss is not the result of Eptam 7–E's failure to control weeds in their fields but its alleged harm to the alfalfa plants themselves. Thus, the Dillons failed to demonstrate they suffered a consequent and proximate injury as the result of their reliance on Wheeler's statement that "Eptam 7–E will kill most weeds except Malva." Accordingly, the trial court did not err in granting summary judgment on this cause of action. *See Gonzalez* (summary judgment affirmed if correct for any reason).

## Strict Product Liability

¶ 14 The Dillons next contend that 7 U.S.C.A § 136j(a)(1)(B) permits state law causes of action for strict product liability when a product does not perform according to its label.[5] For a *prima facie* case of strict product liability, the plaintiff must demonstrate that the product was in a defective condition that made it unreasonably dangerous, that the defective condition existed when the product left the defendant's control, and that the defective condition proximately caused the plaintiff's injuries. *Gosewisch v. American Honda Motor Co.,* 153 Ariz. 400, 737 P.2d 376 (1987). A product may be

unreasonably dangerous because of a manufacturing defect, a design defect, or an informational defect encompassing its instructions and warnings. *Id.*

¶ 15 When a state law cause of action for strict product liability against a pesticide manufacturer is based on a theory of either a defective design or a manufacturing defect, it is not preempted. *National Bank of Commerce; Taylor AG Indus.; Worm.* But, "[w]hen a claim, however couched, boils down to an assertion that a pesticide's label failed to warn of the damage plaintiff allegedly suffered, the claim is preempted by FIFRA." *Etcheverry v. Tri–Ag Serv.,* 22 Cal.4th 316, 93 Cal.Rptr.2d 36, 993 P.2d 366, 377 (2000); *see also Andrus; National Bank of Commerce; Worm; Papas v. Upjohn Co.,* 985 F.2d 516 (11th Cir.1993); *Barnes; but see Sleath v. West Mont Home Health Servs.,* 304 Mont. 1, 16 P.3d 1042 (2000) (failure-to-warn claims not preempted by FIFRA, overruling contrary state precedent).

¶ 16 The basis for the Dillons' claim that Eptam 7–E is unreasonably dangerous is unclear. In their complaint, the Dillons alleged in their strict product liability cause of action, "Eptam 7–E has a manufacturing or design defect and [they] suffered damage to their property as a result of the unreasonably dangerous product sold and Zen[e]ca is strictly liable in tort for the damages." Nothing in the record elaborates or explains the factual basis for this assertion. The Dillons' opposition to the summary judgment motions merely stated that "Eptam 7–E is a dangerous product that destroyed [their] alfalfa crop and caused a reduction in harvest of their 1999 crop as well." In contrast, their disclosure statement said, "The directions and Dr. Wheeler's statements regarding use of the product were not reliable." In their depositions, the Dillons both testified that the directions were unreliable and that that

---

4. At oral argument, the Dillons abandoned their cause of action for negligent misrepresentation, relying solely on their claim of fraudulent misrepresentation.

5. That provision makes it unlawful for a person to sell or distribute "any registered pesticide if

any claims made for it as a part of its distribution or sale substantially differ from any claims made for it as a part of the statement required in connection with its registration under section 136a of this title." 7 U.S.C.A. § 136j(a)(1)(B).

incorrect information had caused their damages.

¶ 17 To the extent the Dillons' product liability cause of action is premised upon a failure to warn or defective directions, it is preempted. *Andrus; National Bank of Commerce; Worm; Papas; Barnes; Etcheverry.* To the extent they were attempting to pursue either a cause of action for defective design or a manufacturing defect, UAP correctly points out that the Dillons "have never articulated a theory of how the Eptam was unreasonably dangerous or defective," much less produced any evidence in support of their claim. Furthermore, the Dillons' alleged damages for lost profits are not recoverable under a products liability theory. *Rocky Mountain Fire & Cas. Co. v. Biddulph Oldsmobile,* 131 Ariz. 289, 640 P.2d 851 (1982); *Arrow Leasing Corp. v. Cummins Arizona Diesel, Inc.,* 136 Ariz. 444, 666 P.2d 544 (App.1983). Thus, the trial court properly granted appellees' summary judgment motions on the Dillons' strict product liability cause of action as well.[6] *See Gonzalez.*

¶ 18 We affirm the trial court's order granting UAP's and Zeneca's motions for summary judgment. In view of our resolution of this issue, the Dillons are not entitled to damages on any of their asserted causes of action, and their arguments challenging appellees' limitations of remedies and disclaimer of warranties are therefore moot. Appellees have provided no legal basis to support their requests for attorney's fees on appeal. None being apparent, we deny their requests.

JOSEPH W. HOWARD, Presiding Judge and WILLIAM E. DRUKE, Judge, Concurring.

---

6. At oral argument, the Dillons argued for the first time that the trial court had erred in granting summary judgment on this cause of action because the defendants had not challenged it in their motions below. This argument is waived by the Dillons' failure to raise it in their opening brief. *See Nelson v. Rice,* 198 Ariz. 563, 12 P.3d 238 (App.2000). It is also controverted by the record, which reflects that Zeneca did argue in its motion for summary judgment that the Dillons' strict product liability cause of action was preempted.