NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

ARIK COMPANY, L.L.C., *Plaintiff/Counterdefendant/Appellee,*

*v.*

RGO, LLC, *Defendant/Counterclaimant/Appellant.*

RGO, LLC, *Third Party Plaintiff/Appellant,*

*v.*

ARAIK KHACHATRIAN, *Third Party Defendant/Appellee.*

No. 1 CA-CV 15-0653
FILED 3-2-2017

Appeal from the Superior Court in Maricopa County
No. CV2013-010442
The Honorable Patricia Ann Starr, Judge

**AFFIRMED**

COUNSEL

Law Office of Cameron A. Morgan, Scottsdale
By Cameron A. Morgan
*Counsel for Appellant RGO, LLC*

Burch & Cracchiolo, P.A., Phoenix
By Jake D. Curtis, Sarah N. O'Keefe
*Counsel for Appellees Arik Company, L.L.C. & Araik Khachatrian*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Randall M. Howe and Judge Jon W. Thompson joined.

---

**W I N T H R O P**, Judge:

**¶1**          RGO, LLC ("RGO") appeals the trial court's judgment, including an order granting partial summary judgment, in favor of Arik Company, L.L.C. ("Arik") and Araik Khachatrian (collectively, "Appellees"). RGO argues that the court erred in (1) granting summary judgment in favor of Arik with regard to whether Arik had exercised a 2012 lease option, (2) finding that RGO failed to prove damages for common area water and trash expenses, and (3) awarding attorneys' fees to Appellees. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

**¶2**          RGO, whose owner/president is John Argo, owns commercial/industrial property on North 27th Avenue in Phoenix. In August 2007, RGO and Arik entered a lease agreement for a portion of the property located at 2038 North 27th Avenue ("the Premises") for use as a restaurant and bar ("the bar"). Khachatrian, on behalf of Arik and himself, executed the lease with Argo.

---

[1]          On appeal, we generally view the facts and reasonable inferences therefrom in the light most favorable to upholding the trial court's judgment. *See IB Prop. Holdings, L.L.C. v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 63, ¶ 2, 263 P.3d 69, 71 (App. 2011). With regard to the trial court's order of summary judgment, however, our review is limited to the record before the trial court at the time it considered the motion, *see GM Dev. Corp. v. Cmty. Am. Mortg. Corp.*, 165 Ariz. 1, 4, 795 P.2d 827, 830 (App. 1990), and we view the facts and reasonable inferences therefrom in the light most favorable to the party against whom summary judgment was granted. *Andrews v. Blake*, 205 Ariz. 236, 240, ¶ 12, 69 P.3d 7, 11 (2003).

¶3        The initial term of the lease was five years—beginning September 1, 2007, and terminating September 1, 2012—with options for Arik to renew "on [the] same terms and conditions" for two additional five-year periods "[i]f not in default."   The lease set rent at $1,850 per month plus tax, and Arik initially paid a total monthly rent of $1,890.  Additional tenants occupied other portions of the Premises.

¶4        On October 5, 2010, a hailstorm damaged the roof of the Premises and an illuminated sign in front of the bar.  As a result, water eventually leaked into the bar in several places, damaging the interior of the restaurant, including the stove hood and vent motor in the kitchen, and creating a safety hazard.

¶5        Argo initially represented to Khachatrian that he would repair the damaged roof and replace the sign.  Despite several requests by Khachatrian, however, repairs did not commence, and shortly thereafter, Argo informed Khachatrian that RGO would not fix the hail damage because RGO did not have insurance to cover the damage, despite the fact that the lease required RGO to carry property insurance and generally required RGO to repair damages that were insured losses.  Khachatrian ordered Argo to physically leave the bar, ending their previously amicable relationship.[2]

¶6        Although Argo had never previously billed Arik for water and trash services, the next day, RGO sent a letter addressed to Arik, which stated that, effective November 15, 2010, RGO would "begin implementing the charges for water and dumpster usage as previously discussed per the terms of your lease agreements."[3]  The letter further explained that the costs

---

[2]       Khachatrian later learned that Argo had an insurance policy on the Premises when an insurance adjuster came into the bar to evaluate the hail damage after Argo made a claim.  Argo represented to his insurance company that the work was completed by U.S. Corps. Contracting, Inc.; however, that company's vice president affirmed in an affidavit that it did not do any of the work for which RGO was ultimately reimbursed by the insurance carrier.  In the meantime, Arik paid for the roof and vent repairs. To this day, the outdoor sign has not been rebuilt.

[3]       Paragraph 11 of the lease provides that, with respect to utilities, "Lessee [Arik] shall pay for all water, gas, heat, light, power, telephone and other utilities and services supplied to the Premises, together with any taxes thereon.  If any such services are not separately metered to Lessee, Lessee

would be divided amongst the tenants and "[a] copy of both the water and dumpster bill will be included for your review." Following this letter, however, Arik did not receive invoices for water or trash services.

¶7          On April 22, 2011, RGO sent another letter to Arik, stating that a payment for water and trash was due. RGO also claimed in the letter that it had just discovered it had been paying for natural gas; however, Arik had been paying for its own natural gas for the bar since September 2007. Beginning May 2011, Arik began leasing its own trash dumpster and paying its own trash bill after Argo removed and hid the common trash dumpster so Arik could not use it.

¶8          On March 15, 2012, Arik, through counsel, sent a letter to RGO proposing to increase its rent from $1,850 to $2,000 to account for water charges. The letter stated in relevant part:

> Mr. Khachatrian informed me that you [Argo] . . . spoke with Arik's employees and informed them that you want my client to pay for water. My client has not been responsible for paying any share of the water in the past and he informed me that when you were signing the lease it was both of your intentions to slightly increase the rental rate so that the water would be included. I would agree, however, that the lease does indicate that you may charge my client a pro rata share for water. Arguably however you waived your right to charge for these services by not charging for them for the past 3+ years. Since you have provided no billing

---

shall pay a reasonable proportion to be determined by Lessor [RGO] of all charges jointly metered with other premises." Additionally, the parties initialed an addendum to the lease dated August 28, 2007 (the same date as the lease itself), which provides in paragraph 49 as follows: "In addition to the rentals due hereunder, Lessee shall pay its pro-rata share of any increased costs of natural gas, trash collection, water and common area electric." The parties appear to dispute the import of the addendum and the meaning of the term "increased" within it. According to Khachatrian, most of the services identified in paragraph 11 were separately metered and directly charged by the provider to him, and he had agreed to pay a higher base rent than the previous tenant in exchange for RGO waiving its right to bill Arik for any remaining common area expenses, such as water and trash. Arik maintains the addendum was created to allow RGO to bill Arik for such expenses only if Arik's usage exceeded that of the previous tenant.

statements for water usage or any documentation of any kind, it is difficult for my client to know what to give you. . . .

I propose this as a solution . . . . [M]y client is going to give you 2,000 dollars per month instead of the 1880 [sic] and at the end of each year your office shall do an accounting and return any overpayment. 120 dollars should be 2 times the cost of his water usage so this should be more than enough to cover the expense.

Please contact me to discuss this matter. . . . If I don't hear from you my client will make the 2,000 dollar payment on the 1st of April and we will assume you are pleased with this arrangement.

RGO never advised Arik the proposed agreement was unacceptable, and Arik thereafter, without objection, increased its monthly rental payments to $2,000 per month.

¶9 In a letter dated April 3, 2012, Arik, through counsel, notified RGO that Arik was exercising its first five-year option to renew the lease.[4]

¶10 On August 30, 2012 (the last day of the initial five-year term of the lease), Arik received a letter from an attorney RGO had engaged to prepare a new lease. Included with the letter was a proposed new three-year lease, without an option to renew, and for a significantly increased monthly rental payment of $3,500, which would include water and taxes. The letter did not mention that Arik was in default or make any claims for past-due water or trash services.

¶11 The same day, Arik, through counsel, responded to RGO, claiming that Arik had already properly exercised its option to renew the lease:

Mr. Khachatrian timely notified Mr. Argo of his intention to renew the lease pursuant to the same terms as the original lease agreement. My office personally sent the notice to Mr. Argo informing him of Mr. Khachatrian's intention to renew the lease.

---

4 RGO disputes on appeal whether Argo/RGO received the letter in a timely fashion. We address RGO's argument *infra*.

> Mr. Argo, your client, hand delivered to my client a new lease with drastically different terms. My client will not sign this 'new lease' and will continue to mak[e] payments pursuant to the lease dated August 28, 2007.

¶12 Several months later, in January 2013, Arik received a letter from RGO's attorney, who stated he was in possession of the April 3 and August 30, 2012 letters Arik's attorney had sent in an effort to ensure the option to renew the lease had been exercised, but claimed RGO could not accept the option to renew the lease because Arik had been "in default on multiple occasions" during the original five-year period of the lease. The basis for the purported default was not provided in the letter.

¶13 On January 17, 2013, counsel for Arik responded, denying that Arik had been in default at any time during the initial five-year term of the lease, including when it exercised the option to renew the lease, and reiterated Arik's claim that it had properly exercised its option to renew. The letter further asserted that RGO had failed to ever provide notice of any alleged default, as required by the lease, and that RGO had waived its right to make Arik a month-to-month tenant.

¶14 RGO next responded when, on May 30, 2013, Arik received a thirty-day notice to quit, claiming that, at the time Arik sought to exercise the option to renew the lease, Arik was in default for "failure to pay the pro rata share of the trash and water pursuant to the lease *amendment*." (Emphasis added.) This was the first time Arik was informed of the reason for the alleged default.

¶15 On July 29, 2013, Arik filed a complaint against RGO to prevent its eviction from the Premises and seeking a temporary restraining order and preliminary injunction to maintain the status quo pending the outcome of the case. Arik alleged in part that RGO was refusing to accept its rent check as a pretext to eviction. Arik also sought monetary damages and the appointment of a receiver. RGO filed a counterclaim and third-party complaint against Khachatrian for forcible entry and detainer, trespass, and breach of contract.

¶16 Following a February 14, 2014 evidentiary hearing,[5] the trial court, the Honorable Lisa Daniel Flores presiding, granted a preliminary

---

[5] Before the evidentiary hearing, Arik had filed a motion for contempt against Candice Maier, Argo's former girlfriend, based on her production

injunction in May 2014, permitting Arik to continue operating the bar for the duration of the litigation, as long as it continued to pay its monthly rent.[6] In its ruling on the preliminary injunction, the court found that Argo and Maier, who testified that she had delivered utility invoices to Arik, were not credible. In making this finding, the court identified numerous instances of specific testimony of each that was inconsistent with documentation, implausible, and/or false. RGO filed a motion for reconsideration of the court's finding that Arik had validly exercised its option to renew the lease by letter from its attorney dated April 3, 2012, but the court denied the motion for reconsideration.[7]

¶17     In October 2014, Arik moved for partial summary judgment, seeking in part a ruling that it was not in breach of the lease at the time it exercised the option to renew and that the option to renew was otherwise validly exercised. Arik also sought a ruling that RGO's counterclaim be dismissed due to the lack of any written notice and opportunity to cure the alleged violations of the lease by Arik.[8]

---

of apparently manufactured monthly utility bill invoices, her failure to respond to a civil subpoena, and her giving purportedly false testimony at her deposition. At the hearing, the court denied Arik's motion for contempt against Maier.

[6]     Meanwhile, shortly after the evidentiary hearing but before the court's ruling on the preliminary injunction, RGO blocked the rear emergency exit to the bar with a large trailer and moved the grease traps and dumpster to the portion of the lot in front of the bar. Phoenix police and fire officials ordered RGO to move the trailer, and Arik filed a motion for contempt against RGO. Although the court did not find RGO in contempt, it ordered RGO to return the dumpster and grease traps to their previous location behind the bar and noted that, at the final resolution of the litigation, the court "may" award attorneys' fees related to this issue.

[7]     Of course, as the trial court properly recognized, legal conclusions reached at the preliminary injunction phase of litigation generally do not constitute law of the case. *See Powell-Cerkoney v. TCR-Montana Ranch Joint Venture, II*, 176 Ariz. 275, 280-81, 860 P.2d 1328, 1333-34 (App. 1993).

[8]     By this time, the Honorable Patricia Ann Starr was presiding. Judge Starr presided over both the summary judgment and trial proceedings.

¶18 After responsive briefing, the trial court granted Arik's motion in part, finding that (1) Arik properly and timely exercised its option to renew the lease, (2) Arik was not in default at the time of renewal, (3) Arik's alleged failure to pay utility bills was not a material breach of the lease, (4) the only evidence of alleged breaches of the lease by Arik that RGO could introduce at trial was Arik's failure to pay its pro rata share of water and trash costs because RGO failed to provide written notice and an opportunity to cure for any other alleged breaches, as required by the lease, and (5) RGO materially breached the lease by refusing to repair the sign that advertised the bar after it was damaged in a hailstorm. The court denied RGO's motion for reconsideration, which challenged only the court's first two rulings.

¶19 On February 18 and 19, 2015, the trial court held a two-day bench trial limited to the parties' claims for damages, including whether RGO was entitled to a damages set-off for any unpaid common utility bills.[9] On May 15, 2015, the trial court issued an under advisement ruling in which the court, after making detailed findings of fact, concluded that neither party had proved its claimed damages.

¶20 On June 15, 2015, Appellees filed a statement of costs and an application for an award of attorneys' fees. After responsive briefing, the trial court issued a minute entry granting Appellees' application, awarding them costs and attorneys' fees. The court memorialized its rulings in a formal judgment filed August 18, 2015. RGO filed a timely notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 12-2101(A)(1) (2016).

---

[9] On the first day of trial, RGO filed but did not serve a second forcible entry and detainer complaint seeking to evict Arik. After trial, but before the court's ruling, RGO moved to lift the preliminary injunction so that it could evict Arik. Arik responded, RGO did not reply, and the trial court denied the request.

**ANALYSIS**[10]

*I.     The Trial Court's Grant of Partial Summary Judgment*

**¶21**       RGO argues that the trial court erred in granting Arik's motion for partial summary judgment.  Specifically, RGO argues the court erred in finding Arik proved it had validly exercised the lease option in 2012 and that RGO was in breach of the lease.

*A.     Standard of Review*

**¶22**       We review *de novo* a trial court's grant of summary judgment. *Salib v. City of Mesa*, 212 Ariz. 446, 450, ¶ 4, 133 P.3d 756, 760 (App. 2006). Summary judgment is proper when "there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law."  Ariz. R. Civ. P. 56(a).  A trial court should grant summary judgment "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990).  "[A]ffidavits that contain inadmissible evidence, that are internally inconsistent, that tend to contradict the affiant's sworn testimony at deposition, and similar items of evidence may provide a "scintilla" or create the "slightest doubt" and still be insufficient to withstand a motion for summary judgment." *Id.* (citations omitted).

**¶23**       We will affirm the trial court's entry of summary judgment if it is correct for any reason.  *See In re Guardianship of Pacheco*, 219 Ariz. 421,

---

[10]       Before addressing the merits of RGO's arguments, we address RGO's failure to fully comply with the Arizona Rules of Civil Appellate Procedure ("ARCAP").  Throughout its opening brief, RGO makes numerous assertions of fact for which it provides no record support.  Rule 13(a)(7)(A), ARCAP, states that an appellant's argument must contain "appropriate references to the portions of the record on which the appellant relies."  The failure to provide proper citation may be treated as waiver of the arguments made.  *See Ritchie v. Krasner*, 221 Ariz. 288, 305, ¶ 62, 211 P.3d 1272, 1289 (App. 2009) (holding the failure to comply with ARCAP 13 can constitute waiver of that claim).  In the exercise of our discretion, we reluctantly decline to apply waiver and address RGO's claims on the merits. We do note, however, that RGO's counsel's failure to comply with the rules has resulted in an unnecessary waste of judicial resources in requiring us to parse the record to find factual support for counsel's assertions.

425, ¶ 13, 199 P.3d 676, 680 (App. 2008); *Greenwood v. State*, 217 Ariz. 438, 441–42 n.7, ¶ 12, 175 P.3d 687, 690–91 n.7 (App. 2008); *Am. Family Mut. Ins. Co. v. Cont'l Cas. Co.*, 200 Ariz. 119, 121, ¶ 9, 23 P.3d 664, 666 (App. 2001). Further, we need not decide the correctness of the trial court's decision if its judgment can be affirmed for an alternative reason. *Barnes v. Sandoz Crop Prot. Corp.*, 189 Ariz. 46, 47, 938 P.2d 95, 96 (App. 1997).

> ### B. The Finding That Arik Validly Exercised the Lease Option

**¶24** RGO first argues that the trial court erred in finding that Arik proved it had validly exercised the lease option in 2012. The trial court found in pertinent part as follows:

> First, the Court finds that Arik properly and timely exercised its option to renew the lease. Arik provided written notice to RGO before the expiration of the lease, as required by the terms of the lease. While Argo now claims that he did not receive the letter renewing the option to renew, he testified at his deposition that he received the letter "shortly after April 3, 2012." Moreover, in response to Requests for Admission, RGO admitted that its attorney responded to the April 3, 2012 letter on January 10, 2013[.] The January 10, 2013 letter specifically references receipt of the April 3, 2012 letter exercising the option to renew. Any evidence contrary to the assertion that Argo received the letter renewing in a timely fashion is simply insufficient to raise a genuine issue of material fact.

> The Court further finds that at the time of the renewal, Arik was not in default. No competent evidence establishes that RGO gave Arik adequate written notice of any default prior to the expiration of the initial five-year term of the lease which would have given Arik the opportunity to cure any default, as required by the terms of the lease. Furthermore, the Court finds that Arik's alleged failure to pay utility bills is not a material breach of the lease. See *Maleki v. Desert Palms Professional Properties, L.L.C.*, 222 Ariz. 327, 214 P.3d 415 (App. 2009) (whether tenant may exercise his right to renew depends on whether breach is material, serious, or substantial.)

(Internal citations omitted.)

¶25        RGO argues that conflicting evidence exists as to whether Argo timely received the April 3, 2012 letter exercising the option to renew the lease.[11]   We find no error in the trial court's analysis and grant of summary judgment as to this issue.  Argo admitted at his deposition that he received the renewal letter "shortly after" April 3, 2012, and the context of his subsequent deposition testimony makes clear the *only* reason he did not consider the exercise of the option valid was due to an alleged default for failing to pay utility bills, not due to an issue with the renewal's timeliness.  Moreover, in an e-mail and letter dated August 30, 2012 (the day before the lease was to expire), counsel for Arik responded to RGO's offer of a new lease by stating that Arik had already timely exercised its option to renew the lease, noting as follows: "My office personally sent the notice to Mr. Argo informing him of Mr. Khachatrian's intention to renew the lease."   Further, although after the date for renewal, RGO's counsel acknowledged having possession of the April 3 and August 30 letters in his January 2013 letter.   RGO provided no explanation how its attorney possessed these two letters if they were not previously received by Argo.  Given the overwhelming evidence that RGO timely received the April 3 letter exercising the option to renew, we disagree with RGO's assertion that its "scintilla" of evidence refuting that conclusion was sufficient to withstand a motion for summary judgment.  *See Orme Sch.*, 166 Ariz. at 309, 802 P.2d at 1008.

¶26        The trial court also did not err in finding that, at the time of the renewal, Arik was not in default.  As the trial court recognized, RGO provided no evidence establishing that RGO gave Arik proper written notice of any default before the initial five-year term of the lease expired — notice that would have given Arik the opportunity to cure any default, as the terms of the lease required.[12]  *See* Lease ¶¶ 13.1(b)-(c), 39.4(a).  RGO's April 22, 2011 letter did not claim a default or demand that payment be

---

[11]        At the preliminary injunction hearing held after his deposition, Argo initially testified that he never received the April 3 letter, but when questioned further, he acknowledged his attorney had shown him the letter and admitted that although he "thought it was after" August 31, 2012, he did not actually know when that occurred.

[12]        Moreover, even if timely raised, RGO's claim that it was unaware of the unauthorized roof repairs paid for by Arik (and therefore could not have provided notice to Arik that such claims constituted a default) makes little sense.  The extensive and obvious damage to the roof would have had to be repaired by someone for the bar to remain open.

made within the cure period, and RGO did not follow up on this letter. Moreover, even if a breach for failure to pay common area utilities existed, Argo admitted the increased rent payments made by Arik and accepted by RGO beginning in 2012 were to resolve any dispute between the parties over utilities, constituting an accord and satisfaction.[13] *See Best Choice Fund, LLC v. Low & Childers, P.C.*, 228 Ariz. 502, 510, ¶ 24, 269 P.3d 678, 686 (App. 2011).

### C.     The Court's Finding That RGO Breached the Lease

**¶27**     RGO also argues the trial court erred when it determined that RGO was in breach of the lease.[14]  The court ruled as follows:

> [T]he Court finds that by refusing to repair the hail-damaged sign, RGO breached the lease.  The lease provides that damage which is an insured loss shall be repaired by the Lessor as soon as reasonably possible.  Argo testified that he received insurance proceeds for the damaged sign and did not rebuild, despite his understanding that the lease required him to do so. . . .  The Court finds this breach to be material.

**¶28**     Even assuming *arguendo* that RGO has not waived this issue by failing to argue it below, we find no error.  The lease requires RGO to

---

[13]     We therefore need not and do not address the parties' arguments regarding whether the trial court erred in determining on summary judgment that Arik's alleged failure to pay utility bills was not a material breach of the lease.

[14]     The trial court's conclusion that RGO breached the lease arguably relieved Arik of its obligations under the lease. *See Murphy Farrell Dev., LLLP v. Sourant*, 229 Ariz. 124, 133, ¶ 33, 272 P.3d 355, 364 (App. 2012) ("[A]n uncured material breach of contract relieves the non-breaching party from the duty to perform and can discharge that party from the contract." (citations omitted)).

maintain property insurance[15] on the Premises,[16] and to make certain repairs to the Premises when RGO receives insurance proceeds. Specifically, paragraph 9.2 of the lease provides in part as follows:

> [I]f at any time during the term of this Lease there is damage which is an Insured Loss . . . , then Lessor shall, at Lessor's sole cost, repair such damage, but not Lessee's fixtures, equipment or tenant improvements, as soon as reasonably possible and this Lease shall continue in full force and effect.

**¶29**        Thus, pursuant to the lease, RGO was obligated to rebuild the illuminated sign destroyed by the hailstorm if it received insurance proceeds for the loss.[17]  Argo admitted receiving insurance proceeds for the sign and not rebuilding it, despite his understanding and acknowledgement that the lease required him to do so.  On this record, the trial court did not err in concluding that RGO materially breached the lease by failing to repair the hail-damaged sign.[18]

---

[15]        Paragraph 8.3 of the lease provides:  "Lessor shall obtain and keep in force during the term of this Lease a policy or policies of insurance covering loss or damage to the Premises, but not Lessee's fixtures, equipment or tenant improvements in an amount not to exceed the full replacement value thereof . . . ."

[16]        Paragraph 2 of the lease defines "the Premises" as 2038 N. 27th Avenue, "including the land and all improvements therein."  Thus, absent further language in the lease to the contrary, the illuminated sign at issue is included as part of the Premises owned by RGO and subject to the lease.

[17]        RGO claims the sign was a fixture and thus not subject to the requirement that it be repaired upon the receipt of insurance proceeds for its damage.  Even assuming *arguendo* that RGO has not waived its claim by raising it for the first time on appeal, and assuming the sign qualifies as a fixture, nowhere does the lease appear to limit the requirement to make repairs to RGO's fixtures.  Paragraph 7.1, which requires RGO, at its expense, to "keep in good order, condition and repair the foundations, exterior walls and the exterior roof of the Premises" cannot reasonably be read in such a manner.

[18]        RGO argues "the trial court, in essence, reversed itself on the materiality issue at trial because it found that [Appellees] suffered no

## II. *The Disputed Common Area Water and Trash Expenses*

**¶30** RGO also argues that the trial court erred in finding that RGO failed at trial to prove its claimed damages for common area water and trash expenses.

**¶31** In denying RGO's claim for damages, the trial court concluded that RGO had failed to establish such damages. The court's conclusion came after it made several findings of fact, including the following:

> 26. Argo claimed that Arik never paid utilities for the entire time he was there, but Argo still offered to renew the lease, albeit on different terms.

> 27. RGO's claim for past due utilities was not supported by the evidence produced at trial.

> 28. Argo's testimony was contradictory on various points. Additionally, he had difficulty remembering details of what happened and dates.

> . . . .

> 31. RGO failed to provide credible evidence of damages for unpaid water, sewer and trash bills, nor did it provide credible evidence that it provided Arik with notice that such bills were due.

> 32. The evidence and testimony regarding the water, sewer, and trash bills was contradictory and provided no basis for calculating amounts owed.

**¶32** "The trial court's findings of fact are binding on this court unless they are clearly erroneous or unsupported by any credible evidence." *Imperial Litho/Graphics v. M.J. Enters.*, 152 Ariz. 68, 72, 730 P.2d 245, 249 (App. 1986) (citing *Wean Water, Inc. v. Sta-Rite Indus., Inc.*, 141 Ariz. 315, 686 P.2d 1285 (App. 1984)). In reviewing the trial court's findings, it is not our prerogative to weigh the evidence or to determine witnesses'

---

damages as a result of not having the sign." The court, however, found in part that Arik had not shown how much its income had decreased and concluded that Arik failed to meet the necessary burden of proof regarding its claim for damages.

credibility; instead, "our duty begins and ends with inquiring whether the trial court had before it evidence reasonably supporting its action viewed in the light most favorable to sustaining the findings." *Id.* (citing *Tanque Verde Enters. v. City of Tucson*, 142 Ariz. 536, 691 P.2d 302 (1984)).

**¶33** After reviewing the trial transcripts, we find no error in the court's characterization of the parties' testimony.[19] Argo and Khachatrian provided contradictory and often difficult to discern testimony throughout the trial. Khachatrian denied at trial and continues to deny on appeal having been presented invoices of bills for common area expenses, including water and trash, and RGO does not refute these denials. As the trier of fact, the trial judge was in the best position to evaluate the credibility of the witnesses and to resolve their conflicting positions. *See Premier Fin. Servs. v. Citibank (Ariz.)*, 185 Ariz. 80, 85, 912 P.2d 1309, 1314 (App. 1995). The trial court made its findings based on its review of the testimony and evidence provided, and on this record, we will not disturb the court's judgment.

### III.    The Trial Court's Award of Attorneys' Fees

**¶34** RGO next argues that the trial court erred in determining that Appellees were the successful party, and thus awarding them a portion of their requested attorneys' fees as well as costs. RGO maintains that, because neither side received an award of damages at the conclusion of trial, neither side could be declared the prevailing party in the litigation.

**¶35** With regard to attorneys' fees, A.R.S. § 12-341.01(A) (2016) provides that, "[i]n any contested action arising out of a contract, express or implied, the court may award the successful party reasonable attorney fees." Further, paragraph 31 of the lease provides for reasonable attorneys' fees to be paid by the "losing party" to the "prevailing party" in "an action to enforce the terms [of the lease] or declare rights hereunder." With regard to costs, A.R.S. § 12-341 (2016) provides that "[t]he successful party to a civil action shall recover from his adversary all costs expended or incurred therein unless otherwise provided by law."

---

[19] The court also found that Khachatrian's testimony was contradictory on various points, and he had difficulty remembering details. Additionally, the court rejected Khachatrian's claim that Arik had overpaid for rent because Arik had previously represented that the increased monthly rent payments it made beginning in April 2012 were to cover any unpaid water charges.

**¶36** "The decision as to who is the successful party for purposes of awarding attorneys' fees is within the sole discretion of the trial court, and will not be disturbed on appeal if any reasonable basis exists for it." *Sanborn v. Brooker & Wake Prop. Mgmt., Inc.*, 178 Ariz. 425, 430, 874 P.2d 982, 987 (App. 1994) (citing *Schwartz v. Farmers Ins. Co.*, 166 Ariz. 33, 800 P.2d 20 (App. 1990)).

**¶37** Relying on *General Cable Corp. v. Citizens Utilities Co.*, 27 Ariz. App. 381, 555 P.2d 350 (1976), *Trollope v. Koerner*, 21 Ariz. App. 43, 515 P.2d 340 (1973), and *Ocean West Contractors, Inc. v. Halec Construction Co.*, 123 Ariz. 470, 600 P.2d 1102 (1979), RGO asserts the trial court should have applied a "no judgment rule" or the "net judgment rule," which, as described in *Trollope*, permits a court to determine the prevailing party by comparing any amount awarded to any setoff or amount awarded in a counterclaim. *See* 21 Ariz. App. at 47, 515 P.2d at 344. Despite RGO's suggestion, however, neither those cases nor this court's opinion in *Murphy Farrell* hold that a "no judgment rule" or "net judgment rule" must be the method by which a court determines which party has prevailed. Indeed, our supreme court in *Ocean West* recognized that although an award of money is "an important item to consider" when determining who has prevailed, the fact that a party does not recover the full measure of relief it requests does not mean that it may not be considered the successful party. 123 Ariz. at 473, 600 P.2d at 1105. Moreover, in *Murphy Farrell*, this court recognized that a court "must assess the overall outcome of the case" to determine if a party has prevailed in a lawsuit. 229 Ariz. at 134, ¶ 35, 272 P.3d at 365.

**¶38** Because the lease does not define the term "prevailing party," we may draw guidance from Arizona cases addressing the definition of the term "successful party" as used in §§ 12-341 and 12-341.01. When applying those statutes, a trial court possesses discretion to determine the successful party in multiple-party litigation and in cases involving multiple parties or multiple claims. *Schwartz*, 166 Ariz. at 38, 800 P.2d at 25 (citing *Pioneer Roofing Co. v. Mardian Constr. Co.*, 152 Ariz. 455, 733 P.2d 652 (App. 1986)). To that end, and depending on the circumstances, the trial court may apply a net judgment determination, as used in *Trollope*, or the court may assess the parties' respective percentage of success, or consider the totality of the litigation. *See id.* (citing *Nataros v. Fine Arts Gallery of Scottsdale, Inc.*, 126 Ariz. 44, 612 P.2d 500 (App. 1980)).

**¶39** In this case, the trial court considered the various tests and weighed the successfulness of each party in the context of the overall case.

In so doing, the court recognized that Arik had prevailed on its primary objective:

> Here, no party prevailed on its claims for damages, but Arik prevailed on its initial request for injunctive relief. While RGO argues that Arik "achieved nothing" by bringing suit, it is clear that while Arik achieved no monetary compensation, it did achieve its goal of keeping the restaurant at its current location, and not being evicted.

Given Appellees' success in obtaining their primary objective, the trial court did not abuse its discretion in determining Appellees were the successful party. *See generally Murphy Farrell*, 229 Ariz. at 134, ¶ 35, 272 P.3d at 365; *Ahwatukee Custom Estates Mgmt. Ass'n v. Turner*, 196 Ariz. 631, 637, ¶ 22, 2 P.3d 1276, 1282 (App. 2000).

**¶40** RGO also argues the trial court abused its discretion in its application of the factors identified in *Associated Indemnity Corp. v. Warner*, 143 Ariz. 567, 570, 694 P.2d 1181, 1184 (1985). As this court has previously noted, "the factors listed in *Wagenseller* [*v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 394, 710 P.2d 1025, 1049 (1985)] and *Associated Indemnity* are not a guide for deciding who is the prevailing party but rather are intended 'to assist the trial judge in determining whether attorney's fees should be granted . . . *once eligibility has been established.*'" *Sanborn*, 178 Ariz. at 430, 874 P.2d at 987 (quoting *Wagenseller*, 147 Ariz. at 394, 710 P.2d at 1049 (emphasis added in *Sanborn*)).

**¶41** In this case, once Appellees' eligibility for attorneys' fees and costs was properly established, the trial court considered the *Associated Indemnity* factors in determining whether attorneys' fees should be awarded to Appellees as the successful party. On appeal, we consider the *Wagenseller* and *Associated Indemnity* factors, but "[a]s long as the record reflects a reasonable basis for the award, we will uphold it." *Orfaly v. Tucson Symphony Soc'y*, 209 Ariz. 260, 267, ¶ 25, 99 P.3d 1030, 1037 (App. 2004). In this case, after consideration of the *Wagenseller* and *Associated Indemnity* factors, we conclude the record not only contains a reasonable basis for the trial court's award, but overwhelmingly supports it. Khachatrian prevailed on all of the claims against him, and Arik prevailed on every aspect of the case, except its claim for damages. Accordingly, we find no abuse of the trial court's discretion in its award of attorneys' fees and costs.

*IV.     Costs and Attorneys' Fees on Appeal*

**¶42**     Both sides request costs and attorneys' fees on appeal pursuant to A.R.S. §§ 12-341, 12-341.01, and paragraph 31 of the lease. Appellees are the prevailing party on appeal; accordingly, RGO's request is denied, and Appellees are awarded their taxable costs and an amount of reasonable attorneys' fees to be determined after compliance with Rule 21, ARCAP.

**¶43**     Additionally, as previously noted, RGO's opening brief fails to comply with Rule 13(a)(7)(A) of the Arizona Rules of Civil Appellate Procedure, resulting in an unnecessary waste of court resources. Moreover, RGO's counsel's briefing is at points disorganized, confusing, incomplete, and unhelpful, and it falls below that expected of appellate advocacy. Under Rule 25, ARCAP, an appellate court may impose sanctions, including costs or attorneys' fees, on an attorney or a party for a violation of the Arizona Rules of Civil Appellate Procedure. Accordingly, in our discretion, responsibility for the award of attorneys' fees to Appellees shall be equal and joint and several between RGO and its appellate counsel.

**CONCLUSION**

**¶44**     The trial court's judgment is affirmed.



AMY M. WOOD • Clerk of the Court
FILED: AA

18